**STATE of New Mexico, ex rel. STATE HIGHWAY COMMISSION OF NEW MEXICO, Petitioner,**

v.

**The UNITED STATES of America and the Pueblo of Laguna, Defendants.**

Civ. No. 3384.

United States District Court

D. New Mexico.

Feb. 8, 1957.

---

John T. Watson, Sp. Asst. Atty. Gen., Austin Roberts, Santa Fe, N. M., for petitioner.

Paul F. Larrazolo, U. S. Atty., Joseph R. McNeany, Asst. U. S. Atty., Wm. A. Brophy, United Pueblos Agency, Albuquerque, N. M., for defendants.

ROGERS, District Judge.

This is a condemnation proceeding instituted by the State of New Mexico upon the relation of the State Highway Commission of New Mexico as petitioners, against the United States of America and the Pueblo of Laguna, defendants, for the purpose of acquiring by eminent domain, a strip of land in Bernalillo County alleged to be necessary for the construction, improvement and design of a public highway in the State of New Mexico, and a route on the National Defense System.

The Petition alleges that the defendant Pueblo of Laguna is a corporate body of Pueblo Indians, and holds title to the lands described in the Petition subject to the restraint on the alienation thereof by the defendant United States of America through its Secretary of the Interior. The Petition concludes with conventional allegations to the effect that the petitioner and the land owners are unable to agree on proper compensation to be paid for the property, and the rights of property sought to be acquired, a survey description of land which totals approximately 178 acres, seeks permission to go on the defendant's lands to construct and maintain dyke and ditch structures outside the right-of-way for drainage pur-

poses, and alleges that the action is brought pursuant to Chapter 282 of the United States Statutes At Large, same being 44 Stat. 498, Act of May 10, 1926.

On the return date set for consideration of an Order permitting immediate occupancy and acquisition and control of access, the defendants United States and the Pueblo of Laguna, through the United States Attorney for the District of New Mexico moved the Court to Dismiss the Petition and deny the Motion for an Order permitting immediate entry, on the following grounds:

(1) The Petition and the Motion fail to state a claim on which relief can be granted.

(2) The Court has no jurisdiction for the reason that this is a suit against the United States of America, which cannot be sued without its consent, and it has not consented to be sued.

(3) That two days prior to the institution of this litigation, the petitioner applied to the Secretary of the Interior for the right-of-way across the land described in the Petition, for the same purposes alleged in the Petition, and that the Secretary of the Interior has not had an opportunity to act on the application, and that the same is still being considered, and that the plaintiff has not exhausted its administrative remedies to obtain the right-of-way, and accordingly, the Court has no jurisdiction to grant the relief sought.

(4) That the petitioner presented to the defendant Pueblo of Laguna a request for a right-of-way across the same land described in the Petition, on the day preceding the filing of this case, and that the Pueblo has likewise not had an opportunity to act upon the same.

Extensive argument was had on the issues drawn between the Motion to Dismiss and the Petition and Motion for immediate entry, after which the Court reserved decision, took the matter under advisement and now is ready to announce its Decision on this phase of the litigation.

At the hearing it was established that the title to the land in question was acquired pursuant to Title 25 U.S.C.A., § 621 et seq., the important provisions of which may be summarized as providing that the title to the land and the improvements thereon is declared to be in the United States of America, in trust for the respective Tribes, Bands or Groups of Indians occupying and using the same as a part of their respective existing reservations, subject to valid existing rights.

■ That the Congress of the United States is vested with the power within Constitutional limits to govern the rights of Indians in this Nation is universally recognized, and no citation of authorities should be required on this proposition. See, however, Article I, Sec. 8, subparagraph 3, Constitution of the United States, providing, in effect, that the Congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian Tribes. All of the legislation relative to Indians enacted by the Congress of the United States appears, so far as the public laws of general application are concerned, in Title 25, United States Code Annotated.

A history of the relations between our National Government and the Indians, from the Coast of Maine to that of California, is fascinating, but the Court must resist the allure of dealing at any length with the many facets of legal interest in connection therewith. For those interested in pursuing this phase of the law, it is recommended that they read, among other authorities, and particularly in connection with the status, rights and privileges of Indians in the Southwest, the cases of United States v. Ritchie, 17 How. 525, 15 L.Ed. 236; United States v. Joseph, 94 U.S. 614, 24 L.Ed. 295; United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107, and United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023. Each of these citations has had detailed scrutiny in the evaluation of Felix S. Cohen in his accepted

treatise "Handbook of Federal Indian Law", U. S. Government Printing Office, Third Printing, 1942.

■ One of the landmark cases as to the status and property rights of Indian Tribes is the case of United States v. Cook, 19 Wall. 591, 86 U.S. 591, 22 L.Ed. 210, decided by the Supreme Court of the United States in 1873. The then Chief Justice Waite held in substance that the right of the Indians in certain lands in Wisconsin acquired by the Menomonee Tribe by Treaty and agreement with the Government was that of occupancy, alone. He further stated that Indians, as such, had no power of alienation, except to the United States. The fee was in the United States, subject only to this right of occupancy. He stated:

"This is the title by which other Indians hold their lands."

We thus see that over eight decades ago, the Supreme Court passed generally on the nature and title of the Indians' possession of lands. It might be stated that even though various other methods have been instituted by Congressional action for the acquiring of Indian lands, the broad principles laid down in the Cook case have not been vitiated.

Directing our attention to a case originating in this District, we find the case of United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107, a 1913 adjudication, the opinion of which was written by Mr. Justice Van Devanter. It originated in a criminal prosecution for introducing intoxicating liquor into the Indian country, the Santa Clara Pueblo in the State of New Mexico. In the District Court a demurrer to the Indictment was sustained and the Indictment dismissed upon the theory that the statute upon which the Indictment was founded was invalid, as applied to Indian Pueblos in New Mexico, because of usurping a part of the police power of the state, and encroaching upon its equal footing with the other states.

The question considered in the Sandoval case was whether the Statutes of the Pueblo Indians and their lands is such

that Congress competently could prohibit the introduction of intoxicating liquor into these lands, notwithstanding the admission of New Mexico to Statehood. It should be remembered that New Mexico acquired the status of a State only the year preceding this opinion.

Mr. Justice Van Devanter, with his usual thoroughness, quoted at length from various Indian Agents and authorities in the Indian Service at various points in New Mexico, as to the customs, habits and sociological background of the Indians. The Supreme Court held in this opinion, that by uniform course of action, commencing in the middle of the Nineteenth Century, the Legislative and Executive Branches of our Federal Government have regarded and treated the Pueblos of New Mexico as dependent communities, entitled to its aid and protection like other Indian Tribes, and considering their Indian lineage, isolated and communal life, primitive customs and limited civilization, this assertion of guardianship over them cannot be said to be arbitrary, but must be regarded as both authorized and controlling. The Supreme Court left open, at that time, the question as to whether the Pueblo Indians were citizens, for the reason that citizenship would not, in itself, be an obstacle to the exercise by Congress of its power to enact laws for the benefit and protection of the Tribal Indians.

The Court had this to say about title to Indian lands, 231 U.S. at page 48, 34 S.Ct. at page 6:

"It also is said that such legislation cannot be made to include the lands of the Pueblos, because the Indians have a fee simple title. It is true that the Indians of each Pueblo do have such a title to all the lands connected therewith, excepting such as are occupied under Executive orders, but it is a communal title, no individual owning any separate tract. In other words, the lands are public lands of the Pueblo, and so the situation is essentially the same as it was with the Five Civilized Tribes, whose lands, although owned

in fee simple, under patents from the United States, were adjudged subject to the legislation of Congress enacted in the exercise of the government's guardianship over those tribes and their affairs."

There is some indication in the Sandoval case that the facts descriptive of the Pueblo Indians, and certain conclusions made as to their status, as set forth in United States v. Joseph, supra, were in error, and to that extent the Joseph case was modified.

The next important case dealing with the status of Indians and title to Indian lands appears in United States v. Candelaria, 1925, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023. Mr. Justice Van Devanter again authored this opinion. The Supreme Court again held that the Pueblo Indian Tribes in New Mexico are dependent communities under the protective care of the United States, and their lands, though held by title in fee simple, are subject to the legislation of Congress enacted in the exercise of the Government's guardianship, and that under both Spanish and Mexican law, these Pueblo Indians, although having full title to their lands, were regarded as in a state of tutelage, and could alienate their lands only by Governmental supervision.

The Candelaria case decided the additional point, among others, that a Pueblo community in New Mexico is a juristic person with capacity to sue and defend, with respect to its lands. I can come to but one conclusion, after reading the Candelaria case, and that is that to acquire title to Indian lands of whatsoever nature, the title of both the Indian Pueblo on the one hand, and of the United States of America on the other hand, must be acquired, either by agreement or by eminent domain, exercised within the ambit of Congressional enactment.

The problem thereupon is presented as to whether or not the Congress of the United States has enacted legislation sufficiently broad in scope and within constitutional limits, to permit a condemning authority to acquire Pueblo Indian lands by eminent domain.

Congress, by 44 Stat. 498, Chapter 282, Act of May 10, 1926, enacted an Act to Provide for the Condemnation of the Lands of the Pueblo Indians in New Mexico for public purposes, and making the laws of the State of New Mexico applicable in such proceedings. Inasmuch as this Statute has not been included in the United States Code or in the United States Code Annotated, the Act is set forth in full as an Appendix to this opinion. The gravamen of the Act is that lands of the Pueblo Indians of New Mexico, the Indian title to which has not been extinguished, may be condemned for any public purpose, and for any purpose for which lands may be condemned under the laws of the State of New Mexico. There are additional provisions relative to the procedures to be followed and service of notice in such actions.

We are thereupon confronted with determining, first, as to whether the Act is broad enough to include the lands sought to be condemned herein, and secondly, as to whether this Act is still in full force and effect.

Cohen, in his Handbook of Federal Indian Law, supra, in discussing the 1926 Act, has the following to say, at page 393:

"Under this Act, Pueblo lands 'may be condemned for any public purpose and for any purpose for which lands may be condemned under the laws of the State of New Mexico'. Condemnation proceedings under this Act must be brought in the Federal Courts and notice of suit must be 'served upon the Superintendent or other officer in charge of the particular Pueblo where the land is situated'.

"This Act is substantially similar to the general statute governing condemnation of allotted lands, but there is no parallel statute governing Tribal lands, generally, so that the Indians are subjected to a type of action from which other Tribes are immune."

An interesting case in our Tenth Circuit is that of the Town of Okemah, Okla-

homa v. United States, 140 F.2d 963. Here condemnation proceedings were instituted by the Town of Okemah, Oklahoma, against the Five Civilized Tribes, to condemn certain lands allotted to Indians. The case was first filed in a State Court of Oklahoma, and the proceeding was removed to the Federal Court from the State Court. After removal, the United States filed a Motion to Dismiss the action on the ground that it was an indispensable party, and that it had not consented to be sued in the State Court.

The trial court sustained the Motion and dismissed the action. On appeal, this action of the trial court was affirmed. The Act of Congress then under consideration was enacted in 1901, and appears as Title 25, U.S.C.A., § 357, which, in part, reads:

"That lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."

The Court of Appeals concluded that the United States was an indispensable party to the condemnation proceedings. It further held that Section 357, Title 25, U.S.C.A., supra, by authorizing condemnation, conferred by implication permission to sue the United States, under the doctrine of State of Minnesota v. U. S., 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235.

The Court then took up the question of whether the Act of Congress of April 12, 1926, 44 Stat. 239, dealing with lands allotted to the Five Civilized Tribes, had been amended by Section 357, supra. The Court held that the Act of April 12, 1926 is a general statute, in the sense that it applied to all suits of the character described therein, and that Section 357, supra, is a special statute applying only to condemnation proceedings.

The Court, through Circuit Judge Phillips, then stated [140 F.2d 965]:

"Where there are two statutes upon the same subject, the earlier be-

ing special and the later [being] general, unless there is an express repeal or an absolute incompatibility, the presumption is that the special is intended to remain in force as an exception to the general. Here, there was no express repeal and there is no absolute incompatibility, for both statutes can be given reasonable operation by the application of such presumption."

This portion of the Okemah opinion is set forth in detail, for the reason that the United States of America has raised the issue that both sections 323 through 328 of Title 25, U.S.C.A., and Section 109(d) of the Highway Act of 1956, Public Law 627 of the 84th Congress, Chapter 462—Second Session, 23 U.S.C.A. § 151 et seq., have either repealed, by implication, 44 Stat. 498, Chapter 282, Act of May 10, 1926, or that they provide administrative remedies which must first be exhausted before recourse can be had to condemnation proceedings.

The Court feels that at this phase of the opinion, the issue should be resolved in favor of the petitioner and against the United States of America, and the defendant Pueblo of Laguna. Neither of the Acts of Congress relied on by the Government, contains an express repealer, repeals by implication are not favored, the language of the Court of Appeals of the Tenth Circuit in the Okemah case are in harmony with the views here expressed, and the Court is of the considered opinion that there are three independent and separate methods of acquiring title to Pueblo Indian lands, namely, first, by condemnation proceedings, as in the case at bar; secondly, by negotiations with the Secretary of the Interior, as provided in Sections 322 et seq., and thirdly, by cooperation between various heads of the Executive Department, as provided in Section 109(d) of the Highway Act of 1956.

The mere fact that an agency desiring to acquire land otherwise subject to eminent domain, takes the pains to initiate proceedings either with the Secretary of the Interior, or under the provisions of the 1956 Highway Act, should

not preclude the petitioner from instituting and maintaining the present action. It is universally recognized in this Nation, that the wheels of all three coordinate branches of the Government grind slowly; that sometimes an impasse develops between the National Government, on the one hand, and the State Government on the other, and not infrequently between various branches of the Executive Branch of our Government. It is to be hoped that perfect synchronization will eventually develop in the instant cause, but until such Utopia is reached, this Court will provide a forum wherein the rights and liabilities of petitioner and defendants alike, will be carefully protected and enforced.

When each of the foregoing authorities are considered, and the many Acts of Congress dealing with Indian lands are studied, this Court, at least, has come to the ultimate opinion that there are certain characteristics concerning the title to Indian lands common in all Indian titles. In the first place, under all of the Indian land title actions, certain possessory rights are granted the Indians, sometimes communally, sometimes jointly and sometimes severally. Secondly, there are certain restraints upon alienation reserved in the sovereign power of the United States of America. This may be under the provisions of an Executive Order, under the terms of a conveyance to the Tribe, or under the terms of a trust deed wherein the United States of America is the trustee and either the Tribes or individual allottees are the beneficiaries.

As can be seen, there may be varying rights as between the Government of the United States on the one hand, and the Indian Tribes or individuals therein on the other. The ramifications of these problems need not be further elaborated upon, here. Suffice it to say, there is either the relationship of trustee and beneficiary, or of guardian and ward. In either event, both the guardian or trustee must be a proper and indispensable defendant in condemnation proceedings, and so, also, must the beneficiaries and wards. That this theory receives at least tacit approval from the courts and textbook writers, will be seen from United States v. Chavez, 290 U.S. 357, 54 S.Ct. 217, 78 L.Ed. 360, and Pueblo De San Juan v. United States, 10 Cir., 47 F.2d 446.

Cohen, again in his Handbook on Federal Indian Law, after discussing the incidents of Pueblo Land ownership, states at page 396:

"In its relations to third parties, however, the rights of the Pueblo are not substantially affected by the distinction between the two forms of title. As a legal owner or as an equitable owner, the Pueblo has all the ordinary rights of a land owner with respect to third parties, except the right of alienation."

The Court therefore concludes as follows:

First, that under the Act of Congress of May 10, 1926, 44 Stat. 498, a remedy for condemnation of Pueblo Indian lands was created.

Second, that the Act of 1926 is still in effect, and is one of three separate and independent methods by which title to Indian lands for rights-of-way may be acquired.

Third, that under the doctrines of State of Minnesota v. U. S., supra, and the Okemah case, supra, the United States of America must and has been joined as a defendant herein,

And lastly, that this Court is a proper forum and has the jurisdiction to try and determine the respective rights of the petitioner and the defendants herein.

### Appendix.

"An Act to provide for the condemnation of the lands of the Pueblo Indians in New Mexico for public purposes, and making the laws of the State of New Mexico applicable in such proceedings."

44 Stat. 498, Chapter 282, Act of May 10, 1926

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that

lands of the Pueblo Indians of New Mexico, the Indian title to which has not been extinguished, may be condemned for any public purpose and for any purpose for which lands may be condemned under the laws of the State of New Mexico, and the money awarded as damages shall be paid to the superintendent or officer in charge for the benefit of the particular tribe, community, or pueblo holding title to same: Provided however, that the Federal courts of said State of the district within which such lands are located shall have and retain jurisdiction of all proceedings for the condemnation of such lands, and shall conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of said State of New Mexico: Provided, also, that notice of each suit shall at the time of filing be served upon the superintendent or other officer in charge of the particular pueblo where the land is situated."