PLAINS ELECTRIC GENERATION AND TRANSMISSION COOPER-ATIVE, INC., Plaintiff-Appellee,

v.

PUEBLO OF LAGUNA and United States of America, Defendants-Appellants.

Nos. 75–1408, 75–1809.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1976.

Philip R. Ashby, Albuquerque, N. M. (Richard Schifter, Washington, D. C., on the brief), for defendant-appellant Pueblo of Laguna.

Edward J. Shawaker, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Edmund B. Clark, George R. Hyde, Dept. of Justice, Washington, D. C., Victor R. Ortega, U. S. Atty., and James B. Grant, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for defendant-appellant United States.

Paul D. Gerber, Santa Fe, N. M., for plaintiff-appellee.

Before HILL, SETH and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This is a condemnation action brought by appellee, Plains Electric Generation and

Transmission Cooperative, Inc., under the State of New Mexico's power of eminent domain. Appellee sought to condemn a right of way for electrical transmission lines and substations across two parcels of land. The first parcel is known as the Paguate Purchase, which is held by the Pueblo of Laguna in fee simple subject to restrictions on alienation under a grant from the United States made in 1884. The other parcel consists of approximately 30,-000 acres of federal land set apart as a reservation for the use and occupation of the Pueblo of Laguna by Executive Order of July 1, 1910.

Appellants, the Pueblo of Laguna and the United States of America, filed a motion to dismiss for lack of jurisdiction. The motion was denied by the United States District Court for the District of New Mexico and two questions were certified for immediate interlocutory appeal to this court. The district court later entered a final judgment in favor of appellees and motion was granted on November 10, 1975, to consolidate the interlocutory appeal with the appeal from the final judgment.

Jurisdiction over the action was based on the Act of May 10, 1926, 44 Stat. 498, which provides in pertinent part:

> That lands of the Pueblo Indians of New Mexico, the Indian title to which has not been extinguished, may be condemned for any public purpose and for any purpose for which lands may be condemned under the laws of the State of New Mexico, and the money awarded as damages shall be paid to the superintendent or officer in charge for the benefit of the particular tribe, community, or pueblo holding title to same: *Provided*, however, That the Federal courts of said State of the district within which such lands are located shall have and retain jurisdiction of all proceedings for the condemnation of such lands  .  .  .  .

The issues presented on appeal are as follows:

1. Does the Act of May 10, 1926, 44 Stat. 498, authorize condemnation of lands set aside for the use and occupation of the Pueblo of Laguna by the Executive Order of July 1, 1910?

2. Has the Act of May 10, 1926, been repealed or superseded by subsequent legislation?

■ Because of our resolution of the second issue, we need not discuss the first. Lands of the Pueblos cannot be alienated without the consent of the United States. *United States v. Candelaria*, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1926). If the 1926 Act is no longer valid, there is no consent by the United States to the forced alienation of this land and the district court was without jurisdiction. We hold the Act of May 10, 1926, has been repealed and is no longer of any effect.

The Act has not been expressly repealed and our judgment is based on the doctrine of repeal by implication.

> There are two well-settled categories of repeals by implication: (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). As a general rule, however, repeals by implication are not favored. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *United States v. Borden Co.*, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939).

■ Appellants first contend the Act of May 10, 1926, was repealed by the Act of April 21, 1928, 45 Stat. 422, 25 U.S.C. § 322. To fully consider this contention, we must first relate the history and purpose of each act. Legislative history and congressional intent are important factors in determining whether there has been a repeal by implication. *See Morton v. Mancari, supra.*

Before 1926 there were statutes providing for acquisition of rights of way over certain Indian lands for specified purposes.

*E. g.*, Act of March 2, 1899, 30 Stat. 990, now 25 U.S.C. §§ 312–318 (railway, telegraph, and telephone lines); Act of March 3, 1901, 31 Stat. 1084, now 25 U.S.C. § 311 (highways). These statutes, however, applied to "Indian reservations" and lands similarly held for the benefit of the Indians.[1] The lands held by the Pueblo Indians in their unique form of ownership in fee simple communal title were not technically "Indian reservations." Until the decision in *United States v. Sandoval*, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107 (1913), it had been held the United States' guardianship and regulatory laws did not extend to the Pueblos residing on such lands.[2] As a result, it was believed that the existing legislation did not authorize acquisition of rights of way over lands held by Pueblos in fee simple communal title and that the only way to remedy the situation was specific legislation. H.Rep.No.955, 69th Cong., 1st Sess. (1926). In this context, the Act of May 10, 1926, was passed.

Thereafter a railroad was built in New Mexico across Pueblo land. Then, a federal district judge held the 1926 Act was insufficient to authorize a suit to condemn a right of way because it provided no means for joining the United States as a party.[3] Congress was notified of this holding and moved to enact a new law which would confirm the legality of the existing railroad and provide a means to obtain rights of way in the future. This legislation, H.R. 9483, became the Act of April 21, 1928. Its purpose was stated by the House Committee on Indian Affairs in H.Rep.No.816, 70th Cong., 1st Sess. (1928).

*The purpose of this bill is to pass legislation whereby rights of way through lands of the Pueblo Indians of New Mexico can be secured* for railway and highway purposes. The bill is for the purpose of correcting legislation heretofore passed, by which a railroad had been built and the right of way paid for in the sum of $3,000. *Legislation heretofore passed May 10, 1926, has been held insufficient* by the Federal court of the district of New Mexico, as not providing methods for bringing the Government in as a party. In other words, the procedure as set forth in the bill was defective.

The purpose of H.R. 9483 is to extend certain sections included in this act and to make the same applicable to the Pueblo Indians of New Mexico.

This legislation permits the acquiring of rights of way from the Indians in whom the fee title is held in common [emphasis added] . . . .

We believe the 1928 Act covers the subject matter of the 1926 Act and was clearly intended to operate as a substitute. Congress considered the 1926 Act to be fatally defective when it passed the 1928 Act. Rather than attempting to remedy that defect and give force to the 1926 Act, the 1928 Act broadened existing Acts of 1899, 1901, and 1875 to apply to the Pueblo Indians of New Mexico. *See* S.Rep.No.799, 70th Cong., 1st Sess. (1928). The unamended 1928 Act is now 25 U.S.C. § 322, which states:

The provisions of the Statutes of the United States governing the acquisition of rights-of-way through Indian lands, to

---

1. For example, 25 U.S.C. § 312 provides grants of right of way, "through any Indian reservation . . . or through any lands reserved for an Indian agency or for other purposes in connection with the Indian service, or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation . . ."

2. *Sandoval* overruled *United States v. Joseph*, 94 U.S. 614, 24 L.Ed. 295 (1876), which held the Pueblos and their lands were outside the protection of federal law. For further discussion

of the historical development of federal guardianship over the Pueblos, see this court's opinion in *New Mexico v. Aamodt*, 537 F.2d 1102 (10th Cir. 1976).

3. Although the principle apparently was not established in 1926, there is no doubt a statute like the 1926 Act confers by implication permission to sue the United States and this would no longer be a valid objection to the 1926 Act. *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Town of Okemah v. United States*, 140 F.2d 963 (10th Cir. 1944).

wit, sections 311–315, 317, 318, 319, and 321 of this title and section 935 of Title 43, and the basic Acts of Congress cited in such sections are extended over and made applicable to the Pueblo Indians of New Mexico and their lands, under such rules, regulations, and conditions as the Secretary of the Interior may prescribe.

The approach taken in 1928 had been recommended to Congress in 1926 but was not accepted. See H.Rep.No.955, 69th Cong., 1st Sess. at 2 (1926). The action taken by Congress in both instances reflects a choice between two proposed solutions to the same problem—providing a means for acquiring rights of way over Pueblo lands. When the solution chosen in 1926 was held defective, Congress resorted to the second option. This indicates the provisions of the 1928 Act were intended to be exclusive, not cumulative.

We realize the intent of Congress to repeal "must be clear and manifest." *United States v. Borden Co.*, 308 U.S. *supra* at 198, 60 S.Ct. 182. There is, however, no lack of clarity here. Congress obviously considered the 1928 Act necessary to authorize rights of way across Pueblo lands. If Congress had intended the 1926 Act to continue in effect, the 1928 Act would have been unnecessary. The limited authority contained in the 1928 Act would add nothing to the general power of condemnation authorized by the 1926 Act. We believe the 1928 Act is a substitute for, not an alternative to, the 1926 Act.

In addition to the previously discussed evidence of legislative intent, the 1928 Act originally was presented to Congress in essentially the form it now appears, but with the inclusion of a section 2 which provided:

That the provisions hereof shall not affect the act approved May 10, 1926 (44 Stat.L. 498).

Upon final consideration before the full house, it was moved that this part of the bill be struck out and the bill was passed without it. The omission of this section from the Act must be considered strong evidence Congress did not intend to save the 1926 Act. See 69 Cong.Rec. 5751–52 (1928).

█ Moreover, this section had to be deleted in order to accomplish the intent of Congress in passing the 1928 Act. In our opinion, the 1928 Act is not only intended as a substitute for the 1926 Act, but also is inconsistent with the 1926 Act and may be considered an implied repeal on that basis. The inconsistency is illustrated by the congressional debate on the 1928 Act.

As initially submitted to committee, the bill contained language which by reference to other statutes authorized the Secretary to grant rights of way: "*Provided, however,* That no right of way for a railroad shall be granted any portion of which lies less than 500 yards from the plaza of any existing pueblo." The committee amended the proviso to apply only to the Santo Domingo pueblo because a railroad already had been built through the plaza of that pueblo. As we mentioned before, the legislation was attempting to validate that transaction as well as provide for the future. The committee later gave its support to an amendment which permitted the granting of rights of way: "Under such rules, regulations, and conditions as the Secretary of Interior may prescribe."

When the bill first came before the House, the Speaker pro tempore asked if there were any objections to the present consideration of the bill, and the following colloquy took place concerning the proposed change in language:

Mr. CRAMTON. I am not sure, Mr. Speaker, what grant of authority the department would feel that language [the amended language] would give them. *It no doubt gives broad enough authority to the department, but I am not sure the department would feel that Congress meant that they could prevent the grant of a right of way within 500 yards of the Santo Domingo pueblo.* For instance, they might only construe it to mean that the right of way would be granted but under such regulations as the department might require, and *it might be held that*

*those regulations did not go so far as to prescribe the location of the right of way.*

Mr. LEAVITT. The gentleman from New Mexico discussed that with the Commissioner of Indian Affairs, and I would be glad to have him make a statement.

Mr. MORROW. I will say to the gentleman from Michigan that a railroad already exists there, and the right of way has been paid for. An act of Congress was passed, but it did not bring in the Government as a party, and it is necessary now to go back and apply certain laws that apply to Indian Reservations in order that this may be carried out. The railroad is already built and runs through this very plaza, and *the purpose of our amendment was to leave the matter entirely within the discretion of the Secretary of the Interior.* . . .

69 Cong.Rec. 5000 (1928) [emphasis added].

When the bill came before the House a second time on April 2, 1928, the language forbidding grants of right of way within 500 yards of a pueblo plaza was deleted as was the language preserving the 1926 Act. That language was replaced by the present language providing that rights of way may be granted "under such rules, regulations, and conditions as the Secretary of the Interior may prescribe." After the amendment was read, Congressman Cramton said:

Mr. Speaker, I have consulted with the department as well as with the gentleman from Montana, and *I am advised by them that the amendment presented is broad enough to give the Secretary authority to disapprove of a certain location for a road if he so desires,* and with that construction of it I have withdrawn any objection I may have to the bill. [Emphasis added.]

The amendment was agreed to and the bill passed. 69 Cong.Rec. 5752 (1928).

It is abundantly clear that H.R. 9483 (the 1928 Act) was amended to give the Secretary of the Interior the power to control rights of way across Pueblo land. If the 1926 Act continues in effect, that power is only illusory. Whenever the Secretary objects to any proposed right of way, a con-demnation action under the 1926 Act would nullify the Secretary's objection. A railroad (or if the Act applied here, a power line and substation) could be built through the middle of a pueblo plaza. We believe this would be a plain contradiction of the intent of Congress. The 1928 Act is so inconsistent with the 1926 Act that it must be held to repeal the 1926 Act under the principle of *Posadas v. National City Bank, supra.*

Appellants also contend the Act of May 10, 1926, may be considered repealed by implication because of inconsistency with the Act of February 5, 1948, 62 Stat. 17, 25 U.S.C. §§ 323–328. Although the 1948 Act may be considered as an independent basis of repeal by implication, it may also be considered as cumulative to the 1928 Act. As will be discussed later, the two form a comprehensive scheme. We believe there is a positive repugnancy between the 1948 Act and the 1926 Act, but this does not negate the probability Congress considered the 1926 Act already repealed. The relevant sections of the 1948 Act follow.

25 U.S.C. § 323:

The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, or nations, *including the lands belonging to the Pueblo Indians of New Mexico,* and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians. [Emphasis added.]

25 U.S.C. § 324:

No grant of a right-of-way over and across any lands belonging to a tribe organized under sections 461–473 and 474–479 of this title [The Indian Reorganization Act of 1934, 48 Stat. 984] . . . shall be made without the consent of the proper tribal officials. . . .

The Pueblo of Laguna is a tribe organized under the 1934 Act governed under an approved constitution. The Indian Reorganization Act also contained a provision for the protection of Indian land. 25 U.S.C. § 476 provides in pertinent part:

> In addition to all powers vested in any Indian tribe or tribal council by existing law, the constitution adopted by said tribe shall also vest in such tribe or its tribal council the following rights and powers: . . . to prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe
> . . . .

While rights of way were perhaps not governed by this section,[4] the 1948 Act did extend that protection. A letter from the Undersecretary of the Department of the Interior to the President *pro tem* of the Senate found in S.Rep.No.823, 80th Cong., 2d Sess. (1948), states at page 4:

> The bill preserves the powers of those Indian tribes organized under the Indian Reorganization Act . . . with reference to the disposition of tribal land.

If the Act of 1926 remains in effect, the 1948 Act would be ineffective as it applies to the Pueblo Indians. They would be without the protection of the Secretary and would be stripped of the powers conferred upon them by the Indian Reorganization Act of 1934.

Further support for the contention that Congress either considered the 1926 Act already repealed or intended to repeal it by the 1948 Act is found in Section 4 of the 1948 Act, 25 U.S.C. § 326, which provides:

> Sections 323–328 of this title shall not in any manner amend or repeal the provisions of the Federal Water Power Act of June 10, 1920 (41 Stat. 1063), as amended

by the Act of August 26, 1935 (49 Stat. 838), nor shall any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands be repealed.

Under the rule of statutory construction known as *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another), the omission of any reference to the 1926 Act is an indication Congress did not intend to save it from repeal. *See Continental Casualty Co. v. United States,* 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426 (1942).

We are aware that the District Court for the District of New Mexico has previously upheld the Act of May 10, 1926, against an argument it was repealed by implication by the 1948 Act, 25 U.S.C. §§ 323–328. *New Mexico v. United States,* 148 F.Supp. 508 (D.N.M.1957). Apparently, repeal by the 1928 Act, 25 U.S.C. § 322, was not argued in that case. The court did not discuss any possible repugnancy, but simply found that the statutes could be concurrently operative and provided separate and independent means of obtaining rights of way over Pueblo lands. While the case may have been well-considered on the arguments before the court, the opinion indicates no consideration of the legislative history and congressional intent that has been presented to us.

We do not see how the Act of May 10, 1926, 44 Stat. 498, can coexist with the Acts of 1928 and 1948. As we view the statutes governing acquisition of rights of way over Indian lands contained in 25 U.S.C. §§ 311–328, they constitute a comprehensive scheme which completely covers the subject of rights of way.[5] Sections 311–322 permit grants of right of way for specific purposes; sections 323–328 permit grants of right of

---

4. *See* 25 U.S.C. § 463(4) (section 3 of the 1934 Act): "Nothing herein contained shall restrict the granting or use of permits for easements or rights-of-way . . . ."

5. Alienation of Indian property rights for other purposes is covered in numerous other statutes which we do not consider relevant here. Appellee contends the cited statutes prima facie

do not cover the whole subject because they do not provide for the condemnation sought here. However, the point we are making is that they cover the subject as far as Congress intended to go. The continued existence of a general condemnation statute is repugnant to the later statutes which do not purport to authorize condemnation.

way for all purposes while preserving the sections applicable to specific purposes. The history of these statutes reflects an effort to overcome the problems caused by the unique nature of Pueblo Indian land holdings and to provide them with the same protection given the lands of other Indians. The United States Supreme Court has held that Pueblo lands are subject to such protection, *United States v. Candelaria* and *United States v. Sandoval, supra,* and the intent of Congress to provide such protection cannot be doubted. The key sections of both the 1928 and 1948 Acts, sections 322 and 323, respectively, specifically include the Pueblo Indians of New Mexico.

The protection afforded by sections 311–328 would be nullified by the continued validity of the Act of May 10, 1926, which permits condemnation suits at any time for any public purpose without the consent of the Secretary or the Indians. At least hypothetically, the 1926 Act would allow complete confiscation of Pueblo lands for the bona fide public purposes of the State of New Mexico. This plain inconsistency with the later statutes leads to the inescapable conclusion that the 1926 Act has been repealed by implication. Although we recognize the strong disfavor with which repeals by implication are viewed, we cannot ignore the very real antagonism between the 1926 Act and the Acts of 1928 and 1948. When the earlier statute emasculates the later one, the two cannot have concurrent effect. The later act must prevail. *Steed v. Roundy,* 342 F.2d 159 (10th Cir. 1965).

For the reasons stated in this opinion, we hold that the Act of 1926, 44 Stat. 498, has been repealed by implication and the district court was without jurisdiction in this case. The judgment is reversed with directions to dismiss the complaint.

SETH, Circuit Judge (dissenting):

I must dissent from the majority opinion because there has been an insufficient showing made by the appellants to sustain the heavy burden which must be shouldered by a party urging repeal by implication.

The appeal on this point is unusual because the basic position of appellants relates to two old statutes, one of 1926 and the other of 1928. Thus there is this long period of administrative and judicial interpretation of the two as being compatible. Also there is the most persuasive argument that the 1928 Act was passed specifically to correct a deficiency in the procedure under the 1926 Act. The relationship of the two was then fully considered by Congress and there was included no express repeal and no express language to indicate the second Act superseded the first. When Congress was so specifically considering in 1928 such a narrow point—condemnation of Pueblo lands in New Mexico—and the procedural problem which had arisen in a specific condemnation proceeding under the 1926 Act, it certainly should be assumed that a repeal would have been expressed had it been intended. Thus it is unrealistic to assume a repeal by implication these fifty years later. The only problem in 1928 was the joinder of the United States under the 1926 Act, and this was all the 1928 legislation was intended to correct. The last portion of the 1928 Act which refers to rules of the agency is no more than a typical reference to regulations for the handling of litigation or negotiated settlement of condemnation actions. It cannot be construed as a grant of authority to control in any way a condemnation proceeding in the courts.

As indicated above, there has been a long judicial interpretation of the 1926 Act, and it has been used a number of times. It was considered in 1957 in *State of New Mexico v. United States,* D.C., 148 F.Supp. 508, and there is no reason to infer that it was not as fully and carefully considered then as it is now. There is also no reason to infer that the arguments were not the same then as they now are, and just as well they could have been more complete. The Acts of 1926 and 1928 are clearly compatible and have been construed together these fifty years. The procedural problem relating to the position of the United States in the condemnation proceedings was clarified in 1928 and this was all that was needed and was the sole reason for the legislation.

I am also unable to agree with the majority opinion as to what is "legislative history," and cannot accept as such letters from the departments concerned nor isolated conversations on the Senate or House floors between individual members.

The Reorganization Act and subsequent legislation of a general nature, such as the Pueblo Lands Act, does not come within the doctrine of repeal by implication, because of the specific nature of the earlier Act and the general nature of the later ones. An attempt of the appellants to add all the unrelated points together, including Acts for negotiated disposition of lands, to meet the requirements of the doctrine demonstrates the weakness of their position.

The fact that Congress is now considering legislation to expressly repeal some or part of the 1926 Act is a telling argument against a position which relies on repeal by implication.

The nature of the Pueblo titles in New Mexico is unique, and by reason of their basic difference from other Indian land titles has necessitated a different statutory treatment. The broad term, "Indian lands," used in the 1926 Act clearly included the basic lands, and lands otherwise acquired by the Pueblos. It is all-inclusive and New Mexico Pueblo lands of all classifications are subject to the 1926 Act.

The majority says: "At least hypothetically, the 1926 Act would allow complete confiscation of Pueblo lands for the bona fide public purposes of the State of New Mexico." This is an unusual argument to support a repeal by implication. The opinion seems to be based in substantial part on this argument that the state could take over, "confiscate" all the Pueblo lands. There does not seem to be any basis in the record for such a threat of take-over, and prior attempts by the state to do so are not indicated. There seem to be some 30,000 acres in but one of the tracts over which the right of way passes. The acreage in the other tract is not described. The record does not show how many thousand acres are held by the many other Pueblos in New Mexico. The same "take-over" could be advanced as a reason to prohibit all condemnation. The state thus could take over all lands owned by nonresidents, or all lands owned by sheep raisers or Republicans.

There are, of course, general condemnation statutes enacted by New Mexico, and all owners are subject to the right of condemnation. There is nothing unusual about the existence of such a right, and the need has been established for several hundred years. There is no reason shown why there should be a presumption of some sort against the 1926 Act as the majority seems to assume. The right of condemnation is an essential power to enable a state government to function. There is no reason why a difference should be made based on who may own the land.

I would thus agree with the decision of the trial court.