691 F.2d 926
 Cornelia DeRoin YELLOWFISH, Stella DeRoin Rowe, Willene
DeRoin, Clarice DeRoin Rickman, Wilma DeRoin Guoladdle,
Pearl H. DeRoin McKinney, Lillian Carson Morgan, Lena
Shadlow Black, Louis (Lewis) Peters, Plaintiffs-Appellants,
v.
CITY OF STILLWATER, Defendant-Appellee.
 No. 81-1948.
 United States Court of Appeals,
Tenth Circuit.
 April 28, 1982.
Rehearing Denied Nov. 12, 1982.
 
 Yvonne T. Knight of Native American Rights Fund, Boulder, Colo., for plaintiffs-appellants.
 Winfrey D. Houston, Stillwater, Okl., and Laura Frossard, Dept. of Justice, Washington, D. C. (Christopher D. Szlichta of Szlichta & Morgan, and Lowell A. Barto, Asst. City Atty., with Winfrey D. Houston, Stillwater, Okl., on the brief), for defendant-appellee.
 Before HOLLOWAY, DOYLE and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 The City of Stillwater filed a petition in federal district court to condemn easements over the trust allotments of the nine Indian appellants (hereinafter collectively referred to as "Yellowfish") and other Indians in Noble County, Oklahoma, for the purpose of constructing a municipal water supply pipeline. The United States was joined as a defendant because the allotments under condemnation were originally issued under the General Allotment Act of 1887, 25 U.S.C. § 331 et seq., with legal title to the land retained by the United States as trustee.
 
 
 2
 Jurisdiction is predicated on section 3 of the Act of March 3, 1901, 25 U.S.C. § 357 (section 357), which provides that "(l)ands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned ...." Yellowfish contends that section 357 was impliedly repealed in part by the Act of February 5, 1948, 25 U.S.C. §§ 323-328 (1948 Act),[1] which empowers the Secretary of the Interior to grant rights-of-way with the consent of Indian allottees.[2] If this were so, the district court would not have subject matter jurisdiction under section 357 to proceed with the proposed condemnation in this case. However, we disagree with Yellowfish and affirm the trial court holding that federal courts have jurisdiction under section 357 to condemn rights-of-way over allotted Indian land without secretarial or Indian consent.
 
 I.
 Background
 
 3
 After the condemnation petition was filed, the Bureau of Indian Affairs sent letters to each of the 110 allottee defendants informing them they could have the United States Attorney represent them in the condemnation action. The nine Indian appellants decided instead to retain private counsel. The trial court concluded that section 357 was not repealed by implication and refused to dismiss the case or stay ongoing proceedings. The court also refused to prohibit the City of Stillwater from taking possession of the condemned allotments in order to construct the water pipeline.
 
 
 4
 Yellowfish filed a petition for permission to take an interlocutory appeal from the trial court's order and a motion for a stay pending appeal. We granted permission for the interlocutory appeal but denied the stay pending appeal. The two issues on appeal are (1) whether federal court jurisdiction is absent because condemnation of rights-of-way under section 357 was impliedly repealed by the 1948 Act, and (2) whether the United States in its capacity as a trustee is required to disclose more specifically its grounds for asserting that right-of-way condemnations are in the best interest of Indians.
 
 II.
 
 5
 Federal Court Jurisdiction and Implied Repeal of Section 357
 
 
 6
 It is a "cardinal rule" that the repeal of a statute by implication is not favored. Morton v. Mancari, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974); Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission, 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968). The implied repeal of a statute of longstanding use may be viewed with even greater disfavor. See Mancari, 417 U.S. at 549, 94 S.Ct. at 2482. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Andrus v. Glover Construction Co., 446 U.S. 608, 618-19, 100 S.Ct. 1905, 1911, 64 L.Ed.2d 548 (1980) (quoting Mancari, 417 U.S. at 551, 94 S.Ct. at 2483). See Steed v. Roundy, 342 F.2d 159, 161 (10th Cir. 1965).
 
 
 7
 Based on its interpretation of Glover Construction, 446 U.S. at 618-19, 100 S.Ct. at 1911, Yellowfish contends that when a partial repeal is advocated the rule that implied repeals are not favored does not apply. Yellowfish has misconstrued Glover Construction and we find no merit in the argument that the partial implied repeal of a statute should be viewed with less disfavor. We also reject Yellowfish's contention that the presumption against implied repeal is not applicable when various Indian statutes are involved. See Plains Electric Generation & Transmission Cooperative v. Pueblo of Laguna, 542 F.2d 1375, 1376-1381 (10th Cir. 1976).
 
 
 8
 There are two well accepted categories of repeal by implication: " '(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.' " Plains Electric, 542 F.2d at 1376 (quoting Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)). In either situation, legislative history and congressional intent are important factors, Plains Electric, 542 F.2d at 1376, but the intent of the legislature must be "clear and manifest" to uphold an implied repeal. Posadas, 296 U.S. at 503, 56 S.Ct. at 352.
 
 
 9
 Yellowfish contends our reasoning in Plains Electric dictates that we should hold section 357 partially repealed by implication. In that case, we held condemnation under a 1926 Act[3] impermissible because that Act was replaced and impliedly repealed by a 1928 Act[4] and by the 1948 Act, both of which require the Secretary's consent to right-of-way grants. Yellowfish asserts that section 357 is "strikingly similar in effect" to the 1926 Act and therefore was impliedly repealed as well.
 
 
 10
 Although the 1926 Act and section 357 have similarities, the important difference is that section 357 authorizes condemnation of allotted land, while the 1926 Act allowed condemnation of lands communally owned by the Pueblo Indians.[5] See Plains Electric, 542 F.2d at 1377. The different treatment accorded by Congress to Indian tribal land and land allotted in severalty to individual Indians has been explained by several courts. See United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 211-215, 63 S.Ct. 534, 536-38, 87 L.Ed. 716 (1943); United States v. 10.69 Acres of Land, 425 F.2d 317, 319 (9th Cir. 1970); United States v. Oklahoma Gas & Electric Co., 127 F.2d 349, 353-54 (10th Cir. 1942), aff'd, 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943). While Plains Electric supports the proposition that Congress distinguished between tribal and allotted lands and did not intend to permit condemnation of tribal or communally owned land, it is silent on the subject of allotted lands. Consequently, that case does not compel the conclusion that Congress also partially repealed section 357 by implication.
 
 
 11
 Three circuits have recognized that section 357 provides an alternative method for acquiring allotted Indian land. In United States v. Minnesota, 113 F.2d 770 (8th Cir. 1940), the Eighth Circuit held that condemnation under section 357, section 3 of the 1901 Act, was not modified by the requirement of secretarial consent for rights-of-way under 25 U.S.C. § 311, section 4 of the 1901 Act. In giving each provision in the statute full effect, the Eighth Circuit explained why Congress could reasonably intend both the consent of the Secretary and the condemnation power without consent to apply to allotted land as alternative methods of right-of-way acquisition:
 
 
 12
 "The land involved, being allotted in severalty, is no longer a part of the reservation, nor is it tribal land. The virtual fee is in the allottee, with certain restrictions on the right of alienation. This restriction, consistent with the Government's paternal policy toward the Indians, was doubtless to protect the Indian from being overreached in the sale of his land. The statutes seem definitely to offer two methods of procedure for the acquisition of a right of way for public highway. Section 3, 25 U.S.C.A. § 357, authorizes the maintenance of condemnation proceedings. Ordinarily, the owner of a fee title to real estate may grant a right of way over his land, but although the allottee is vested with fee title, his right of alienation is restricted, and hence, it would not be possible to secure a right of way from such allottee by purchase, however desirable it might be, and however advantageous to the allottee. By Section 4 of the Act, 25 U.S.C.A. § 311, the Secretary of the Interior is authorized to grant permission for the opening and establishment of a public highway through lands allotted in severalty. Thus, it was made possible to acquire such a right of way by either of two methods, the Government having consented to each of these methods. So considered, each of these sections is an effective and reasonable provision in the procedure for the acquisition of a right of way, neither dependent upon the other."
 
 
 13
 113 F.2d at 773.
 
 
 14
 This court has similarly rejected the implied repeal argument. In Transok Pipeline Co. v. Darks, 565 F.2d 1150, 1153 (10th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978), we noted that although the Secretary's approval was required for rights-of-way under 25 U.S.C. § 323 (the 1948 Act) and various other provisions, his approval was not necessary for condemnation under section 357. Accord, Nicodemus v. Washington Power Co., 264 F.2d 614, 617-18 (9th Cir. 1959). We explained that "(u)ndoubtedly Congress considered the safeguards available in federal judicial proceedings to be sufficient so that the permission of the Secretary was not required." 545 F.2d at 1153. We disagree with Yellowfish's contention that Minnesota, Nicodemus, and Transok Pipeline[6] were wrongly decided.
 
 
 15
 Yellowfish also argues that condemnation of rights-of-way under section 357 conflicts with current congressional policy embodied in other statutes. In the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 et seq. (IRA), and the Oklahoma Indian Welfare Act of 1936, 25 U.S.C. §§ 501 et seq. (OIWA), Congress substantially changed prior Indian policy. For example, section 1 of the IRA, id. § 461, prohibited further allotment of any Indian reservation land. Nevertheless, existing allotments were continued and remain in effect. Moreover, allotments are still made to Indians not residing on reservations. See 25 U.S.C. § 334.
 
 
 16
 Federal policy toward Indians is often contained in several general laws, special acts, treaties, and executive orders, and these must be construed in pari materia in ascertaining congressional intent. See Stevens v. Commissioner, 452 F.2d 741, 744, 745 n.8 (9th Cir. 1971). "And, although the 'rule by which legal ambiguities are resolved to the benefit of the Indians' is to be given 'the broadest possible scope,' '(a) canon of construction is not a license to disregard clear expressions of ... congressional intent.' " Glover Construction, 446 U.S. at 619, 100 S.Ct. at 1911 (quoting De Coteau v. District County Court, 420 U.S. 425, 447, 95 S.Ct. 1082, 1094, 43 L.Ed.2d 300 (1975)). The test is the intent of Congress, not whether the statute is general or special.
 
 
 17
 We find it persuasive that in 1976 Congress still viewed section 357 as a valid condemnation statute. In that year it passed a statute that repealed the 1926 Act at issue in Plains Electric. Act of September 17, 1976, 90 Stat. 1275 (1976 Act). At the same time, the 1976 Act amended the 1928 Act to extend section 357 to the Pueblo Indians of New Mexico and their lands. 90 Stat. 1275.
 
 
 18
 In Oklahoma Gas & Electric, 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716, the Supreme Court considered whether secretarial permission granted to a state under 25 U.S.C. § 311 to build a highway over allotted Indian land included the right of the state to permit the construction of a rural electric line along the highway. In concluding that it did, the Court said:
 
 
 19
 "Oklahoma is spotted with restricted lands held in trust for Indian allottees. Complications and confusion would follow from applying to highways crossing or abutting such lands rules differing from those which obtain as to lands of non-Indians. We believe that if Congress had intended this it would have made its meaning clear."
 
 
 20
 Id. at 211, 63 S.Ct. at 536 (emphasis added). This reasoning applies equally well to the present situation where condemnation of rights-of-way on allotted land interspersed with non-Indian land is needed to effectively carry out public purposes such as construction of water pipelines.
 
 
 21
 We conclude that the intent of Congress to partially repeal section 357 by implication is not "clear and manifest," and that the two statutes are not in irreconcilable conflict. In fact, section 357 and the 1948 Act can be harmonized. The two statutes provide alternative methods for a state-authorized condemnor to obtain a right-of-way over allotted lands. The potential condemnor may proceed under section 357 to condemn the right-of-way, or he may apply to the Secretary of the Interior for permission to purchase the right-of-way under the 1948 Act, if the allottees' consent is obtained.
 
 
 22
 The long history of condemnation of rights-of-way over allotted lands without Secretarial consent, the various cases upholding the practice, and the disfavor with which courts view repeal by implication support this conclusion. We have considered Yellowfish's other arguments that section 357 has been partially repealed and find them to be without merit. Accordingly, the trial court has jurisdiction under section 357 over Stillwater's condemnation of the water pipeline.
 
 III.
 United States as Fiduciary
 
 23
 Yellowfish questions whether the legal position assumed by the United States in support of Stillwater's power to condemn trust allotments is a reasonable and permissible exercise of judgment consistent with its duties as trustee to the Indians. Yellowfish argues that the United States should be required to disclose more specifically the grounds for its position that condemnation of rights-of-way is in the best interest of its Indian beneficiaries. Under the facts of this case, we disagree. When the United States merely supports and carries out the clear intent of congressional policy as manifested in section 357, it does not breach its trust and it is not required to make a showing that its position is in the Indians' best interest. See Nicodemus, 264 F.2d at 618. As we previously stated, Congress has already weighed the Indians' interest and "(u)ndoubtedly Congress considered the safeguards available in federal judicial proceedings (under section 357) to be sufficient." Transok Pipeline, 565 F.2d at 1153.
 
 
 24
 Even if the Government needed to demonstrate why right-of-way condemnations are in the best interest of Indians, we are persuaded that the Government adequately made such a showing in oral argument. If condemnation is not permitted, a single allottee could prevent the grant of a right-of-way over allotted lands for necessary roads or water and power lines. Moreover, Indian allottees benefit as much from public projects as do those non-Indian property owners whose land is interspersed with the allottees' land.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The 1948 Act provides in pertinent part:
 "The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, or nations, including the lands belonging to the Pueblo Indians in New Mexico, and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians."
 25 U.S.C. § 323
 "No grant of a right-of-way over and across any lands belonging to a tribe organized (certain) sections ... of this title ... shall be made without the consent of the proper tribal officials. Rights-of-way over and across lands of individual Indians may be granted without the consent of the individual Indian owners if (1) the land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant; (2) the whereabouts of the owner of the land or an interest therein are unknown, and the owners or owner of any interests therein whose whereabouts are known, or a majority thereof, consent to the grant; (3) the heirs or devisees of a deceased owner of the land or an interest therein have not been determined, and the Secretary of the Interior finds that the grant will cause no substantial injury to the land or any owner thereof; or (4) the owners of interests in the land are so numerous that the Secretary finds it would be impracticable to obtain their consent and also finds that the grant will cause no substantial injury to the land or any owner thereof."
 25 U.S.C. § 324.
 "No grant of a right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just. The compensation received on behalf of the Indian owners shall be disposed of under rules and regulations to be prescribed by the Secretary of the Interior."
 25 U.S.C. § 325.
 
 
 [2]
 Under certain limited circumstances, the Secretary may authorize a right-of-way without Indian consent. See 25 U.S.C. § 323 supra n.1
 
 
 [3]
 Act of May 10, 1926, 44 Stat. 498 (1926 Act)
 
 
 [4]
 Act of April 2, 1928, 25 U.S.C. 322 (1928 Act)
 
 
 [5]
 Moreover, the 1928 Act's legislative history indicates that Congress intended it to repeal and substitute for the 1926 statute authorizing condemnation. Plains Electric, 542 F.2d at 1377-79. We have found no legislative history for the 1948 Act suggesting a similar congressional intent
 
 
 [6]
 We note that a decision of this court may not be overturned by a panel of three judges but must instead be considered by the court en banc. However, this poses no problem in the present case because we agree with the conclusion in Transok Pipeline that condemnation of allotted lands may proceed under section 357 without the Secretary's consent