UNITED STATES ex rel. The SHO-SHONE INDIAN TRIBE and The Arapahoe Indian Tribe of the Wind River Reservation in Wyoming, et al., Appellants,

v.

Fred A. SEATON, Secretary of the Interior, Appellee.

No. 13634.

United States Court of Appeals District of Columbia Circuit.

Argued May 2, 1957.

Decided Sept. 5, 1957.

Mr. Marvin J. Sonosky, Washington, D. C., with whom Messrs. Glen A. Wilkinson and Donald C. Gormley, Washington, D. C., were on the brief, for appellants.

Mr. Roger P. Marquis, Attorney, Department of Justice, for appellee. Mr. S. Billingsley Hill, Attorney, Department of Justice, also entered an appearance for appellee.

Before EDGERTON, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

PER CURIAM.

Two Indian tribes and their representatives contest the Secretary of the Interior's leasing of lands in which the tribes claim an interest. They appeal from a judgment dismissing their complaint.

An Act of Congress of August 15, 1953, 67 Stat. 592, provides in Section 1 for payment by the United States, to the two tribes, of $1,009,500 as "full, complete, and final compensation, except as provided in section 5 of this Act, for terminating and extinguishing all of the right, title, estate, and interest, including minerals, gas and oil, of said Indian tribes and their members of, in and to the lands, interests in lands, and any and all past and future damages arising out of the cession to the United States, pursuant to the Act of March 3, 1905 (33 Stat. 1016) of that part of the former Wind River Indian Reservation lying within" described boundaries. [25 U.S.C.A. § 611 note.] Section 5 of the 1953 Act provides: "Notwithstanding any other provision of law, the United States shall deposit in the Treasury of the

United States to the credit of said tribes * * * 90 per centum of the gross receipts of the United States, as they are received from time to time, from all leases, bonuses, royalties, or other proceeds derived under the mining and mineral-leasing laws of the United States from any and all lands in which all rights and interests of the tribes are terminated and extinguished by the terms and conditions of section 1 of this Act and which are embraced within the boundaries of the tract described in said section 1." 67 Stat. 613 [25 U.S.C.A. § 611 note].

An Act of 1920, 41 Stat. 437, 441, as amended, 30 U.S.C.A. § 181, authorized the Secretary of the Interior to make mineral leases, including oil and gas leases, of lands owned by the United States. Pursuant to the 1920 Act as amended, the Secretary now makes oil and gas leases within the boundaries described in the 1953 Act. In the present suit, the tribes ask to have such leasing enjoined and such leases cancelled. They say that "so long as they retain the right to 90% of the proceeds from the mineral deposits, they remain the beneficial owners of the minerals, and that such mineral deposits, beneficially owned by the Tribes, may not be leased under the Mineral Leasing Act of 1920 * * *, which is limited to public lands 'owned by the United States' but may be leased only by competitive bid in accordance with the special 1916 statute governing these particular lands or the general statutes governing Indian lands"; referring to Acts of 1916, 39 Stat. 519; 1924, 43 Stat. 244, 25 U.S.C.A. § 398; and 1938, 52 Stat. 347, 25 U.S.C.A. § 396b.

■■■ The District Court dismissed the complaint, on the ground that the 1953 Act made the lands in question part of the public domain and no longer subject to statutes regulating leases of Indian lands. We agree. Both the 1953 Act and its legislative history plainly show that Congress intended to extinguish all rights and interests of the tribes in these lands, not excepting oil and gas rights. The Report of the Senate Committee on Interior and Insular Affairs, recommending passage of the bill, contains a letter from the Assistant Secretary of the Interior in which he says: "It is our understanding that the bill would extinguish the tribes' interests in and to all of the oil, gas, and other mineral resources, as well as the surface resources, of the remaining, undisposed ceded lands within the boundaries of the Riverton project, as they would be defined by the bill. It appears to be the intent of the bill that, in lieu of such oil, gas, and other mineral resources, the tribes shall be paid 90 percent of the royalties, bonuses, and rentals received by the United States for the oil, gas, and other minerals in these lands. * * * " S.Rep.No. 644, 83d Cong., 1st Sess. (1953) 9. The corresponding House Report, No. 269, 83d Cong., 1st Sess. (1953), is substantially similar in this respect. Though statutes terminating Indian property rights should be construed narrowly, we cannot ignore the intention of Congress where it is perfectly plain.

Affirmed.