Julia NICODEMUS and R. H. Spencer
et al., Appellants,

v.

WASHINGTON WATER POWER COM-
PANY, a Corporation, United States
of America, Appellees.

No. 16054.

United States Court of Appeals
Ninth Circuit.

Feb. 25, 1959.

Rehearing Denied April 21, 1959.

Samuel W. Fancher, Carl Maxey, Spokane, Wash., for appellants.

Paine, Lowe, Coffin & Herman, John Huneke, Spokane, Wash., W. F. McNaughton, McNaughton & Sanderson,

Coeur d'Alene, Idaho, Ben Peterson, U. S. Atty., Boise, Idaho, Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Atty., Department of Justice, Washington, D. C., for appellee.

Before JAMES ALGER FEE, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

We are required in this case to determine the validity of an order of the United States District Court for the District of Idaho, decreeing condemnation of an easement for the construction and maintenance of an electric transmission line over and along a portion of a designated 40 acre tract of land in Idaho which was allotted in severalty to appellant Julia Nicodemus, an enrolled member of the Coeur d'Alene Indian Tribe, the title to which tract of land is held in trust for appellant by the United States.

The appellant is a privately owned public utility corporation, lawfully doing business in the State of Idaho as a public utility engaged in the distribution of electric energy to the public, and is duly authorized under and by virtue of the laws of the State of Idaho to exercise the right of eminent domain in the State of Idaho.

 The appellee joined as defendants in the proceeding below the United States of America, the appellant, and R. H. Spencer, a farmer tenant on the property. The United States is an indispensable party to a suit to establish or acquire an interest in allotted Indian land held under a trust patent, and such a suit must be instituted and maintained in the federal court. State of Minnesota v. United States, 305 U.S. 382, and cases cited in footnote 1 appearing on page 386, 59 S.Ct. 292, at page 294, 83 L.Ed.

235. The United States filed a notice of appearance, participated in the hearing, and procured an appraiser of the Indian Agency who furnished proof of the amount of damage at the hearing before the commissioners. The appellant by answer denied the authority of appellee to condemn. After hearing, the district court entered its order decreeing that the easement and rights sought to be acquired and appropriated by the appellee are necessary to the discharge of the public duties of the appellee, are necessary to the construction, use, maintenance, and reconstruction of its power transmission lines, approved the taking of the property of appellant for such use, and appointed commissioners. The procedure followed by the district court was in accordance with Idaho law,[1] and Section 71A of the Federal Rules of Civil Procedure, 28 U.S. C.A. To such order appellant filed a motion for new trial, which the district court denied. The compensation was determined by the commissioners. The amount of the award was paid into court, and the right to possession of the area included in the easement was awarded to appellee.

The order questioned on this appeal is based on the last section of the Code and has been interpreted by the Idaho courts as being appealable. McLean v. District Court, 24 Idaho 441, 134 P. 536.

The United States filed a brief on this appeal supporting the validity of the district court order.

On this appeal appellant contends that the order of the district court, and section 357, Title 25 U.S.C.A., under which the jurisdiction of the district court was invoked, are in direct violation of the provisions contained in Article 5 of an agreement between the United States Government and the Coeur d'Alene In-

---

1. The pertinent provisions appear in Chapter 7, Idaho Code, Sec. 704, which are as follows:

"Before property can be taken it must appear:

"1. That the use to which it is to be applied is a use authorized by law.

"2. That the taking is necessary to such use.

"3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

dians on March 26, 1887, which agreement was ratified as a treaty on March 3, 1891; that such treaty is not subject to modification, violation, or abrogation by general Acts of Congress; and that under Section 357 Congress unlawfully and wrongfully surrendered its control over Indians and their property to the several States. A subsidiary contention is that appellee failed to obtain permission or approval of the Secretary of the Department of the Interior, under the provisions of Title 25 U.S.C.A. Chapter 8, Sections 311, 312, 313, 320 and 321.

In order to properly posture appellant's contentions, it is necessary to review certain historical facts. On March 26, 1887, an agreement was entered into by and between commissioners duly appointed by and acting on behalf of the United States and the Coeur d'Alene Tribe of Indians. Volume 26, Chapter 543, U. S. Statutes at Large, 51st Congress, 1027. This agreement was ratified March 3, 1891. Under this agreement the Coeur d'Alene Indians relinquished to the United States all claims to lands elsewhere except portion of the land within the boundaries of their reservation in the Territory of Idaho, known as the Coeur d'Alene Reservation. Article 5 of the agreement provides: "In consideration of the foregoing cession and agreements, it is agreed that the Coeur d'Alene Reservation shall be held forever as Indian land and as homes for the Coeur d'Alene Indians, now residing on said reservation, and the Spokane or other Indians who may be removed to said reservation under this said agreement, for their posterity: and no part of said reservation shall ever be sold, occupied, open to white settlement, or otherwise disposed of without the consent of the Indians residing on said reservation." Since the tract of land involved here was originally a part of such Indian reservation, appellant contends that the order of the district court decreeing condemnation is in direct violation of that part of Article 5 which provides that *"no part of said reservation shall ever be sold, occupied, open to white set-*

*tlement, or otherwise disposed of, without the consent of the Indians residing on said reservation."* (Italics ours)

While it might be argued that the italicized language does not deny the right of condemnation for the purpose of acquiring an easement of the type sought by appellee, and hence that the treaty has not been violated by the order in question, we will not pursue that line of argument.

Appellant treads softly on the fact that subsequent to the agreement the Coeur d'Alene Indian Reservation was broken up and, with consent of the Indians, the tribal land therein opened to settlement and allotted under the General Allotment Act (Title 25 U.S.C.A. § 331, Act of Feb. 8, 1887, c. 119, par. 1, 24 Stat. 388; Act of Feb. 28, 1891, c. 383, par. 1, 26 Stat. 794; amended June 25, 1910, c. 431, par. 17, 36 Stat. 859.) Under this Act, appellant received allotment No. 80, Coeur d'Alene Indian Reservation, and patent was issued to her subject to the usual statutory restrictions and provisions, and reserving title in the United States in trust.

This change in status has been recognized. In United States v. State of Minnesota, 8 Cir., 113 F.2d 770, at page 773, the court stated: "The land involved, being allotted in severalty, is no longer a part of the reservation, nor is it tribal land. The virtual fee is in the allottee, with certain restrictions on the right of alienation. This restriction, consistent with the Government's paternal policy toward the Indians, was doubtless to protect the Indian from being overreached in the sale of his land." In United States v. Oklahoma Gas & Electric Co., 10 Cir., 127 F.2d 349, at page 353, it is stated, "Land allotted in severalty is no longer part of the reservation, nor is it tribal land; the virtual fee is in the allottee with certain restrictions on the right of alienation." The Supreme Court recognized this distinction when it affirmed United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716. The treaty relates to tribal land and lands

within the reservation. We are concerned here with a tract of land which in earlier times was part of the Coeur d'Alene Indian Reservation, but which was allotted in severalty to the appellant and is now held under a trust patent. It is not part of the reservation, nor is it tribal land. While it appears clear to us that the tract is not land subject to the treaty, the law has long been established that the plenary power of Congress over Indian tribes and tribal property cannot be limited by treaties so as to prevent repeal or amendment by later statute. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299. See cases collected in Sioux Tribe of Indians v. United States, Ct.Cl., 146 F.Supp. 229, and Seneca Nation of Indians v. Brucker, D.C., 162 F.Supp. 580. The appellant recognizes and concedes this principle of law, but continues to argue that the order of the district court is in violation of the treaty.

The jurisdiction of the district court was invoked under the Act of March 3, 1901, c. 832, Sec. 3, 31 Stat. 1084, Title 25 U.S.C.A. § 357. This section reads: "Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee." Appellant argues that under this section Congress has unlawfully and wrongfully surrendered its control over Indians and their land to the several States. By this Act Congress has simply provided that lands allotted in severalty to Indians may be condemned for any public purpose and that such action shall proceed in accordance with the law of the State where the property is located, and the award paid to the allottee. Under this section, as construed by the Supreme Court of the United States, the United States is an indispensable party, and jurisdiction is vested only in federal courts. State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235.

■■ The appellant also argues that section 357, Title 25 U.S.C.A, being a general statute, should not be construed in derogation of Indian treaty rights or the rights of Indians, and cites many decisions in support of such contention. We have reviewed the authorities cited. In our view, the test is the manifested intention of Congress, and not whether the statute be general or special. As was pointed out in Elk v. Wilkins, 112 U.S. 94, 5 S.Ct. 41, 44, 28 L.Ed. 643, "general acts of congress do not apply to Indians unless so expressed as clearly to manifest an intention to include them." See also United States v. Forty-Three Gallons of Whisky, 108 U.S. 491, 2 S.Ct. 906, 27 L.Ed. 803; Spalding v. Chandler, 160 U.S. 394, 16 S.Ct. 360, 40 L.Ed. 469. Congress, under section 357, expressly authorized the condemnation for any public purpose of lands allotted in severalty to Indians. This is the only subject matter of the section. The section is clear, plain, unambiguous, and there is no difficulty in determining the Congressional intent. We are unable to see any construction of said section which would exempt appellant's land from condemnation. As stated in United States ex rel. Shoshone Indian Tribe v. Seaton, 101 U.S.App.D.C. 234, 248 F.2d 154, at page 155, certiorari denied 355 U.S. 923, 78 S.Ct. 366, 2 L.Ed.2d 353: "Though statutes terminating Indian property rights should be construed narrowly, we cannot ignore the intention of Congress where it is perfectly plain."

■ Appellant's argument that the order of the district court is void because the appellee failed to obtain approval or permission of the Secretary of the Interior before proceeding with the condemnation action is without merit. Appellant contends that the "Congress specifically provided for a manner and means of condemning a right of way through Indian lands, Title 25 U.S.C.A. Chapter 8, Sections 311, 312, 313, 320 and 321; all of which requires the approval of the Secretary of the Interior, which provides that the Secretary of the

Interior is authorized and empowered to grant a right-of-way and specifically defined the manner and means in which the approval of the Secretary of State (sic) shall be obtained, and the limitations of the state easements to be granted." We have carefully perused the sections designated by appellant. Section 311 deals with opening of highways. Section 312 deals with rights of way for railway, telegram and telephone lines; townsite stations. Section 313 deals with width of rights of way. Section 320 relates to acquisition of land for reservoirs or materials. Section 321 relates to rights of way for pipe lines. Section 323, Title 25 U.S.C.A. provides: "The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, or nations, including the lands belonging to the Pueblo Indians in New Mexico, and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians."

In our opinion Section 323 and Section 357 offer two methods for the acquisition of an easement across allotted Indian land for the construction of an electric transmission line. The United States has consented to both methods. In United States v. State of Minnesota, 8 Cir., 113 F.2d 770, the question involved was whether the State of Minnesota might acquire by virtue of Section 357, Title 25 U.S.C.A., an easement over allotted land for the establishment of a public highway, without having first secured from the Secretary of the Interior permission for the opening and establish-ment of such public highway through allotted Indian land, as provided in Section 311, Title 25 U.S.C.A. The Court stated at page 773: "The land involved, being allotted in severalty, is no longer a part of the reservation, nor is it tribal land. * * * The statutes seem definitely to offer two methods of procedure for the acquisition of a right of way for public highway. Section 3, 25 U.S.C.A. § 357, authorizes the maintenance of condemnation proceedings. * * * By Section 4 of the Act, 25 U.S.C.A. § 311, the Secretary of the Interior is authorized to grant permission for the opening and establishment of a public highway through lands allotted in severalty. Thus, it was made possible to acquire such a right of way by either of two methods, the Government having consented to each of these methods. So considered, each of these sections is an effective and reasonable provision in the procedure for the acquisition of a right of way, neither dependent upon the other."

We hold that the appellee was not required to secure the permission of the Secretary of the Interior before initiating the condemnation suit under Section 357.

█ Finally, appellant argues that since a trust patent is involved the United States, as trustee or guardian, could authorize condemnation only upon a showing that it was to the best interests of the appellant. While we believe that the clear, explicit intent of Congress as manifested in Section 357 forecloses such argument, we are aware that the use of electricity by the general public and its transmission is in the general interest. Section 357, in allowing condemnation for public purposes, carries out such right for the benefit of the public as a whole. The district court found that the easement granted was for public use.

The judgment of the district court is affirmed.