SOUTHERN CALIFORNIA EDISON
COMPANY, a corporation,
Plaintiff-Appellee,

v.

Steven Allen RICE; Anita Vivian Miller; Cheryl Saubel Miranda; Ellen Rice Ward; Bobbie Ray Preckwinkle; and Laverne Saubel Nelson, Defendants-Appellants,

United States of America,
Defendant-Appellee,

and

33.49 Acres of Land in the County of Riverside, State of California; Goodyear Service Stores; John H. Wingate, Jr.; Timothy J. White; John R. Stotts, Jr.; Vernon H. Holbrook, d/b/a Wingate Air Conditioning Service, partnership; and Unknown Others, Defendants.

No. 81-5725.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1982.

Decided Aug. 26, 1982.

Art Bunce, Karshmer & Bunce, Escondido, Cal., for defendants-appellants.

Philip Walsh, Rosemead, Cal., Laura Frossard, Washington, D. C., for plaintiff-appellee.

Before ELY, SCHROEDER, and NORRIS, Circuit Judges.

ELY, Circuit Judge:

Appellants, members of the Agua Caliente Band of Cahuilla Indians, appeal from a summary judgment granted to Southern California Edison Company ("the Company") on its complaint in eminent domain. We affirm.

The Company instituted this action in federal court pursuant to 25 U.S.C. § 357[1] seeking to condemn a right-of-way to install electrical transmission lines over lands allotted to the Indian appellants herein.[2] The United States, as trustee for the allottees and owner of title to the allotments, was named as a defendant. *See Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). The allottees filed an answer raising as affirmative defenses lack of subject matter jurisdiction and failure to state a claim under California eminent domain law.

The District Court, following this Court's decision in *Nicodemus v. Washington Water Power Company*, 264 F.2d 614 (9th Cir. 1959), held that section 357 authorized condemnation of rights-of-way over the allotments. The District Court in the present case also found that the Company had stated a claim under California eminent domain law. Pursuant to its memorandum of decision, the District Court rendered summary judgment for the Company after the parties had stipulated to the amount of compensation. The allottees reserved their right to appeal from the judgment on the issues other than just compensation and timely filed their notice of appeal.

The Indian allottees' first contention on appeal presents the issue whether land allotted in severalty to Indians, held in trust by the United States for the "sole use and benefit of the Indian," 25 U.S.C. § 348, constitutes "property appropriated to public use" within the meaning of the California eminent domain law, Cal.Civ.Pro.Code §§ 1235.180, 1240.510, 1240.610. If the allottees' land is considered "property appropriated to public use," then the Company's complaint in eminent domain is subject to dismissal for failure to allege that the public use it proposes is either compatible with or more necessary than the existing use. *See id.* §§ 1240.510, 1240.610; *Woodland School District v. Woodland Cemetery Association*, 174 Cal.App.2d 243, 245, 344 P.2d 326, 327 (1959).

We conclude that the Indian allottees' land is not "property appropriated to a public use" within the meaning of the California eminent domain law. The state has defined "property appropriated to public use" as "property . . . in use for a public

---

1. The section, enacted in 1901, provides:

   Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee.

   25 U.S.C. § 357.

2. The Indians' allotments were authorized by the Act of March 2, 1917, ch. 146, 39 Stat. 969,

976, and the Agua Caliente Equalization Act of 1959, Pub.L.No.86–339, 73 Stat. 602 (codified at 25 U.S.C. §§ 951–958 (1976)). *See Arenas v. United States*, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363 (1944); *United States v. Pierce*, 235 F.2d 885 (9th Cir. 1956). Patents issued to the Indian allottees declare that the United States holds the land "in trust for the sole use and benefit of the Indian to whom such allotment shall have been made." 25 U.S.C. § 348.

purpose." Cal.Civ.Pro.Code § 1235.180. *See East Bay Municipal Utility District v. Lodi,* 120 Cal.App. 740, 750–58, 8 P.2d 532, 536–39 (1932). The California Supreme Court has construed "public use" as " 'a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government.' " *City of Oakland v. Oakland Raiders,* 31 Cal.3d 656, 665, 183 Cal.Rptr. 673, 646 P.2d 835 (1982) (quoting *Bauer v. County of Ventura,* 45 Cal.2d 276, 284, 289 P.2d 1, 6 (1955)). Thus, "appropriated to public use," in the context of the California eminent domain law, appears to refer to prior condemnations authorized by the California Legislature. *See, e.g., East Bay Municipal Utility District,* 120 Cal.App. 740, 8 P.2d 532.[3]

Moreover, although land allotted in severalty to individual Indians may be said to further in some sense federal policies toward Indians, the very nature of the allotment scheme and section 357 shows that these lands are not "appropriated to public use" in the sense contemplated by the California statute. The Congressional policy of allotting tribal land to individual Indians was intended to promote assimilation of Indians into American society. *See Northern Cheyenne Tribe v. Hollowbreast,* 425 U.S. 649, 650 n.1, 96 S.Ct. 1793, 1794 n.1, 48 L.Ed.2d 274 (1976). This policy was furthered by protecting Indians from the operation of state laws that might decrease the economic value of their allotments. *See Squire v. Capoeman,* 351 U.S. 1, 9–10, 76 S.Ct. 611, 616–617, 100 L.Ed. 883 (1956); *United States v. Rickert,* 188 U.S. 432, 437, 23 S.Ct. 478, 480, 47 L.Ed. 532 (1903).

With respect to condemnation actions by state authorities, Congress explicitly afford-ed no special protection to allotted lands beyond that which land owned in fee already received under the state laws of eminent domain. *See* 25 U.S.C. § 357. Thus, consistent with its assimilation policy, Congress placed Indian allottees in the same position as any other private landowner *vis-a-vis* condemnation actions, with the interest of the United States implicated only to the extent of assuring a fair payment for the property taken and a responsible disposition of the proceeds. *See Minnesota v. United States,* 305 U.S. 382, 388, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1938). Although United States policy toward Indians may have shifted away from an assimilationist approach in the years since the allotments were made, *see Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974), the fact that Congress has not amended or repealed section 357 shows that the position of Indian allottees with respect to condemnation actions under state law has not changed.[4]

Thus, the status of Indian allottees under section 357 does not implicate the situation addressed by the pleading requirements of the California law concerning "property appropriated to public use." Since Congress, with respect to state condemnation actions, has chosen to have Indian allottees remain in virtually the same position as those who privately own land for their sole use and benefit, the potential for a conflict in public uses that arises when a public entity attempts to condemn land already in use for a public purpose is not presented in this situation.[5] *See, e.g., Woodland School District,* 174 Cal.App.2d at 245–46, 344 P.2d at 327. The Company's complaint in eminent domain was not subject to dismissal under Cal.Civ.Pro.Code §§ 1240.510, 1240.610 for

---

**3.** That the California Legislature intended sections 1240.510 and 1240.610 to permit an accommodation between prior and subsequent condemnations by state-authorized entities is supported by the general rule that a state may not condemn federally owned lands within its boundaries without the consent of the United States Government. *See generally* 1 J. Sackman, *Nichols on Eminent Domain* § 2.22 (3d ed. 1981).

**4.** Congress recently indicated that section 357 is still in force when it extended operation of

that section, and reemphasized the applicability of sections 323–328, to the Pueblo Indians of New Mexico. *See* Act of Sept. 17, 1976, Pub.L. No.94–416, § 3, 90 Stat. 1275; H.R.Rep.No.800, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S. Code Cong. & Ad.News 2368, 2369–70.

**5.** That Congress consented to state condemnation of allotted Indian land "for *any* public purpose," 25 U.S.C. § 357 (emphasis added), is a further indication that Congress does not consider allotted land to be property already devoted to a potentially conflicting public use.

failure to allege a compatible or more necessary public use.

■ Second, the Indian allottees contend that 25 U.S.C. §§ 323–324, which empower the Secretary of the Interior to grant rights-of-way "for all purposes" only with the consent of Indian allottees, is the exclusive means by which the Company may obtain its right-of-way across their allotted lands. This issue is squarely controlled by *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959). Section 357, which provides that lands allotted in severalty to Indians may be condemned for any purpose in accordance with state law, *see* note 1 *supra*, is an *alternative* method for the acquisition of an easement across allotted Indian land to which the United States has consented. 264 F.2d at 618. *Accord, Yellowfish v. City of Stillwater*, 691 F.2d 926 (10th Cir. 1982); *Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1153 (10th Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *United States v. Minnesota*, 113 F.2d 770, 773 (8th Cir. 1940).

*United States v. 10.69 Acres of Land*, 425 F.2d 317 (9th Cir. 1970), does not contradict the holding in *Nicodemus*. In *10.69 Acres* we analogized sections 323 and 357 to comparable provisions in Title 23 and concluded that Congress intended to protect *tribal* lands, and not allotted lands, from the condemnation procedures set forth in 23 U.S.C. § 107(a). 425 F.2d at 319–20.[6] The Tenth Circuit's reasoning in *Plains Electric Generation and Transmission Cooperative, Inc. v. Pueblo of Laguna*, 542 F.2d 1375 (10th Cir. 1976), likewise does not aid the allottees' case. *Plains Electric* is inapposite to a construction of section 357 because it involved a statute providing for the condemnation of communally owned Indian land, not land allotted in severalty as provided for in section 357. *See Yellowfish*, at 929.

■ The allottees contend finally that California jurisdiction and venue provisions, requiring that suits in eminent domain shall be commenced in California superior court,

have "disabled" the Company from bringing this action in federal court. This contention is without merit. Condemnation proceedings pursuant to 25 U.S.C. § 357 must be brought in federal court. *Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). The state through its own jurisdictional provisions cannot strip a federal court of jurisdiction that Congress has conferred to it over suits involving state-created rights. *See Markham v. City of Newport News*, 292 F.2d 711, 713 (4th Cir. 1961); *cf. Oklahoma Gas & Electric Co. v. United States*, 609 F.2d 1365, 1366 n.1 (10th Cir. 1979) (state does not by virtue of section 357 acquire the right to use state procedures or laws in condemnation suits under that section). Moreover, the Federal Rules of Civil Procedure explicitly provide that the Federal Rules, and not state venue provisions, are to apply in actions involving the exercise of the power of eminent domain under state law. Fed.R.Civ.P. 71A(a), (k).

The judgment of the District Court is AFFIRMED.

---

**6.** Moreover, we are bound to the holding in *Nicodemus* until such time as an en banc panel of this Court overrules it. *Upton v. Commis-*sioner, 283 F.2d 716, 723 (9th Cir. 1960), *cert. denied*, 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236 (1961).