719 F.2d 956
 NEBRASKA PUBLIC POWER DISTRICT, a Public Corporation and
Political Subdivision of the State of Nebraska, Appellant,
v.
100.95 ACRES OF LAND IN COUNTY OF THURSTON, HIRAM GRANT, et
al; Unknown Owners; United States of America and
Department of The Interior, Appellees.
 No. 82-2042.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1983.
Decided Oct. 28, 1983.
 
 Barlow, Johnson, DeMars & Flodman, Lincoln, Neb., for appellant.
 Michael D. Gooch, Papillion, Neb., for appellees.
 Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 This case concerns the authority of a public utility to condemn tracts of land held in trust by the United States for individual Indians and for Indian tribes. We hold that pursuant to 25 U.S.C. Sec. 357 the utility has the authority to condemn land allotted in severalty to Indians but not land in which the Indian tribe holds an interest.
 
 
 2
 This litigation arose from a plan of Nebraska Public Power District (NPPD) to construct an electric transmission line across the Winnebago Indian Reservation. The Winnebago Tribe has opposed construction of the proposed power line. NPPD brought this action in federal district court to condemn a right-of-way across twentynine tracts of land within the reservation. The tracts sought to be condemned by NPPD were allotted by the United States to individual Indians pursuant to either the Indian General Allotment Act, 24 Stat. 388, 25 U.S.C. Sec. 348, or the treaty between the United States and the Winnebago Tribe. 14 Stat. 671. Shortly before this action was filed, several individual Indian allottees deeded to the United States, in trust for the tribe, certain undivided future interests in land along the route of the proposed transmission line. The allottees reserved life estates in all of the deeded land. Thus, the land sought to be condemned by NPPD is of two types: (1) allotted land in which only individual Indians hold interests; and (2) land in which the tribe holds certain undivided future interests. The district court held that with respect to the allotted land, NPPD's condemnation action failed because 25 U.S.C. Sec. 357 had been impliedly repealed in part by the more recent Indian Right-of-Way Act of 1948, 25 U.S.C. Secs. 323-28, which requires that consent to a right-of-way be granted by the Secretary of the Interior, and in certain cases, by the individual Indian allottees. Nebraska Public Power District v. 100.95 Acres of Land in County of Thurston, 540 F.Supp. 592, 600-02 (D.Neb.1982). Neither the individual Indian allottees nor the Secretary of the Interior has consented to the granting of a right-of-way over the disputed tracts of land. With respect to the land in which future interests had been conveyed to the tribe, the district court held that this was tribal land which could not be condemned pursuant to 25 U.S.C. Sec. 357. Id. at 603-04. We reverse the holding of the district court concerning the allotted land, and affirm the holding concerning the tribal land.
 
 I. ALLOTTED LAND
 
 3
 25 U.S.C. Sec. 357, enacted by Congress in 1901, provides as follows:
 
 
 4
 Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee.
 
 
 5
 Section 357 clearly authorizes the judicial condemnation of a right-of-way across allotted Indian land for the construction of an electric transmission line. The question on appeal is whether, as the district court held, section 357 has been impliedly repealed in part by the more recently enacted Indian Right-of-Way Act of 1948, 25 U.S.C. Secs. 323-28, which conditions condemnation of a right-of-way across allotted Indian land upon consent of the Secretary of Interior, and in certain cases, upon consent of the individual allottee.
 
 
 6
 To determine whether an earlier statute has been impliedly repealed by a later one, we are guided by familiar principles. The intent of Congress must be "clear and manifest" to support an implied repeal. Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). "The cardinal rule is that repeals by implication are not favored." Id. Absent affirmative evidence of congressional intent to repeal the earlier statute "the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Id. at 551, 94 S.Ct. at 2483.
 
 
 7
 In this case, we find no clearly expressed congressional intent impliedly to repeal section 357. Prior to 1948, access across Indian lands was governed by an amalgam of special purpose access statutes dating back as far as 1875. See, e.g., 25 U.S.C. Secs. 311 (opening of highways), 312 (rights-of-way for railway, telegraph, and telephone lines), 319 (rights-of-way for telephone and telegraph lines), 320 (acquisition of lands for reservoirs or materials), 321 (rights-of-way for pipe lines); 43 U.S.C. Secs. 959 (rights-of-way for electrical plants), 961 (rights-of-way for power and communications facilities). This statutory scheme limited the nature of rights-of-way to be obtained, and in certain cases, created an unnecessarily complicated method for obtaining rights-of-way. Each application for a right-of-way across Indian land had to be examined painstakingly to assure that it fit into one of the narrow categories of rights-of-way authorized by statute. When a right-of-way was not authorized under one of the existing statutes, which often was the case, it became necessary to obtain easement deeds, approved by the Secretary of the Interior, from each of the Indian owners. Frequently, many individual Indians, often widely scattered, owned undivided interests in a single tract of land. Obtaining the signatures of all the owners was a time-consuming and burdensome process, both for the party seeking the right-of-way and for the Interior Department. See Letter from Oscar L. Chapman, Under Secretary of the Interior, to Arthur H. Vandenberg, President pro tempore of the Senate, H.R.Rep. No. 739, 80th Cong., 1st Sess. (1947), reprinted in 1948 U.S.Code Cong.Serv. 1033, 1036.
 
 
 8
 The purpose of the 1948 Act was to simplify and facilitate this process of granting rights-of-way across Indian lands. The bill originally applied only to the Osage Indian lands in Oklahoma, but the bill was later amended to relate to rights-of-way across Indian lands of all reservations. H.R.Rep. No. 739, supra, 1948 U.S.Code Cong.Serv. at 1035. The 1948 Act does not, by its express terms, amend or repeal any existing legislation concerning rights-of-way across Indian lands. On the contrary, the statute provides that "any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands" is not repealed. 25 U.S.C. Sec. 326. The legislative history explains that this provision "to preserve the existing statutory authority relating to rights-of-way over Indian lands" was included "to avoid any possible confusion which may arise, particularly in the period of transition from the old system to the new." Interior Department Letter, supra, 1948 U.S.Code Cong.Serv. at 1036. This provision was aimed at the special purpose access statutes which authorized rights-of-way upon secretarial consent and does not expressly address section 357. Nevertheless, the explanation of this provision does suggest a general intent in the 1948 Act of adding to, rather than replacing, existing legislation concerning rights-of-way across Indian lands. Indeed, at another point in the legislative history, it is explained that "the bill broadens existing powers of condemnation over individually owned Indian lands (emphasis added)." Id. Although this was in reference to the condemnation powers of the federal government, not section 357, it nevertheless suggests that by no means was there a clear intent generally to limit the power of condemnation over Indian lands.
 
 
 9
 In sum, it is apparent from the legislative history that the 1948 Act was not enacted as a restrictive measure in response to problems engendered by section 357, which authorized condemnation pursuant to state law without secretarial consent. Rather, the 1948 Act was a response to quite the opposite problems; the limited nature of rights-of-way authorized by statute, and the difficulty of obtaining easement deeds from all the various owners. Conditioning rights-of-way in certain cases upon consent of only the Secretary was intended to make the law more lenient in situations where consent of all the owners previously had to be obtained. Thus, it is not consistent with the legislative history of the 1948 Act expansively to interpret the secretarial consent provision as an intended restriction upon obtaining all rights-of-way across Indian lands.
 
 
 10
 Subsequent congressional action affirms the continued vitality of section 357. In 1976, Congress indicated clearly that it believed section 357 and the 1948 Act were both still in effect by extending the reach of both statutes to the Pueblo Indians of New Mexico and their lands. 90 Stat. 1275; 25 U.S.C. Sec. 322. See generally 1976 U.S.Code Cong.Serv. 2368-76. See also Southern California Edison Co. v. Rice, 685 F.2d 354, 356 n. 4 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983). Although action by a subsequent Congress cannot be accorded the weight of contemporary legislative history, it is some indication of legislative intent. See North Haven Board of Education v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982); Cannon v. University of Chicago, 441 U.S. 677, 687 n. 7, 99 S.Ct. 1946, 1952 n. 7, 60 L.Ed.2d 560 (1979).
 
 
 11
 Finding no clearly expressed congressional intent to repeal section 357, we consider whether section 357 is in irreconcilable conflict with the 1948 Act. We considered an analogous situation in United States v. Minnesota, 113 F.2d 770 (8th Cir.1940). In that case, we held that section 357 was a separate and independent means of acquiring a right-of-way from 25 U.S.C. Sec. 311, which required secretarial consent for obtaining a right-of-way. We concluded that:
 
 
 12
 The statutes seem definitely to offer two methods of procedure for the acquisition of a right of way for public highway. Section 3, 25 U.S.C.A. Sec. 357, authorizes the maintenance of condemnation proceedings. Ordinarily the owner of a fee title to real estate may grant a right of way over his land, but although the allottee is vested with fee title, his right of alienation is restricted, and hence, it would not be possible to secure a right of way from such allottee by purchase, however desirable it might be, and however advantageous to the allottee. By Section 4 of the Act, 25 U.S.C.A. Sec. 311, the Secretary of the Interior is authorized to grant permission for the opening and establishment of a public highway through lands allotted in severalty. Thus, it was made possible to acquire such a right of way by either of two methods, the Government having consented to each of these methods. So considered, each of these sections is an effective and reasonable provision in the procedure for the acquisition of a right of way, neither dependent upon the other.
 
 
 13
 Id. at 773. In United States v. Minnesota, the two statutes at issue were part of the same legislative enactment, and thus, there was not present the issue of implied repeal by a subsequently enacted statute. Nonetheless, the analysis in United States v. Minnesota concerning the coexistence of two statutory provisions--one requiring secretarial consent, one not--applies directly to this case.
 
 
 14
 The specific conflict presented in this case--the alleged inconsistency between section 357 and the 1948 Act--has been addressed in three courts of appeals decisions. In Nicodemus v. Washington Water Power Co., 264 F.2d 614 (9th Cir.1959), the Ninth Circuit held that the 1948 Act and section 357 offered "two methods for the acquisition of an easement across allotted Indian land for the construction of an electric transmission line." Id. at 618. In Southern California Edison Co. v. Rice, supra, 685 F.2d at 357, the Indian allottees contended that the 1948 Act was the exclusive means by which the company could obtain a right-of-way across the allotted Indian lands. The Ninth Circuit reaffirmed its holding in Nicodemus that section 357 "is an alternative method for the acquisition of an easement across allotted Indian land to which the United States has consented." Similarly, in Yellowfish v. City of Stillwater, 691 F.2d 926 (10th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983), an Indian allottee contended that section 357 was impliedly repealed in part by the 1948 Act. The Tenth Circuit concluded that in spite of the 1948 Act, "federal courts have jurisdiction under section 357 to condemn rights-of-way over allotted Indian land without secretarial or Indian consent." Id. at 927. The court found no irreconcilable conflict between section 357 and the 1948 Act. Indeed, it concluded that the two provisions could be harmonized: "The two statutes provide alternative methods for a state-authorized condemnor to obtain a right-of-way over allotted lands." Id. at 930.
 
 
 15
 The tribe and the Indian allottees urge us to rely upon Plains Electric Generation and Transmission Cooperative, Inc. v. Pueblo of Laguna, 542 F.2d 1375 (10th Cir.1976), in which a 1926 Act authorizing condemnation was held impliedly repealed by a 1928 Act and by the 1948 Act, which require secretarial consent to obtain rights-of-way. We agree with the distinction made by the Ninth and Tenth Circuits that in Plains Electric the earlier statute authorized condemnation of tribal land, while section 357 authorizes condemnation of allotted land. Yellowfish v. City of Stillwater, supra, 691 F.2d at 929; Southern California Edison Co. v. Rice, supra, 685 F.2d at 357. Plainly, tribal land and allotted land have been treated differently by the courts. See, e.g., United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 211-15, 63 S.Ct. 534, 536-38, 87 L.Ed. 716 (1943).
 
 
 16
 The appellees urge that we distinguish the previous courts of appeals decisions because they involved allotted land outside an Indian reservation. In contrast, the allotted land in this case is located within an Indian reservation. It may well be good policy to treat allotted land within a reservation, in which the tribe has a greater interest, differently from allotted land outside the reservation. Congress, however, has drawn no such distinction in the statute. We cannot ignore the plain meaning of the statute, which provides simply for condemnation of "allotted land" without regard to its location. See United States v. Clarke, 445 U.S. 253, 254, 100 S.Ct. 1127, 1128, 63 L.Ed.2d 373 (1980) (plain meaning rule applied to 25 U.S.C. Sec. 357).
 
 
 17
 We agree with the other circuits that have considered the issue that section 357 and the 1948 Act can be reconciled. The statutes serve similar but not identical purposes: Section 357 authorizes the condemnation of land while the 1948 Act provides for the granting of consent for rights-of-way. Thus, based on the disfavor of an implied repeal of a statute, the absence of any clearly expressed congressional intent to repeal section 357, and finally, the compatibility of section 357 and the 1948 Act based on the case law of this and other circuits, we hold that the district court committed error in its conclusion that the 1948 Act impliedly repealed the authorization for obtaining rights-of-way by condemnation proceedings in section 357.
 
 II. TRIBAL LAND
 
 18
 25 U.S.C. Sec. 357 authorizes condemnation only of "[l]ands allotted in severalty to Indians * * *." Before this action was filed, several individual Indians deeded fractional undivided interests in certain of the tracts of land to the United States, in trust for the tribe, reserving life estates in the lands. If the deeded land is now considered tribal land, as opposed to allotted land, it cannot be condemned pursuant to 25 U.S.C. Sec. 357. Instead, consent of the Secretary and the proper tribal officials must be obtained pursuant to the 1948 Act. 25 U.S.C. Sec. 324.
 
 
 19
 NPPD contends that the deeds are void because they were not made in compliance with Nebraska law. This argument is without merit. Conveyances of Indian lands must conform to the requirements of federal law. Smith v. McCullough, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682 (1926). NPPD next argues that the deeds are void because they were not approved by the Secretary of the Interior. 25 C.F.R. Sec. 152.22 provides that "[t]rust or restricted lands * * * or any interest therein, may not be conveyed without the approval of the Secretary." 25 C.F.R. Sec. 152.1(a) defines "Secretary" to include an authorized representative of the Secretary acting under delegated authority. In this case, it has been stipulated that the Bureau of Indian Affairs of the Interior Department processed, filed, approved, and recorded these conveyances in accordance with its usual practice and with its regulations. The Bureau was acting under its delegated authority from the Secretary in processing the deeds and the conveyances are valid under federal law.
 
 
 20
 Finally, NPPD argues that even if the conveyances are valid, the future interests conveyed to the tribe do not constitute tribal land. In essence, their argument is that the grantee takes only the interest that was conveyed by the grantor. Since the grantor held allotted land, not tribal land, NPPD claims that the interests received constitute "land held by the tribe" but not "tribal land."Tribal land is defined in 25 C.F.R. Sec. 169.1(d):
 
 
 21
 "Tribal land" means land or any interest therein, title to which is held by the United States in trust for a tribe, or title to which is held by any tribe subject to Federal restrictions against alienation or encumbrance * * *. (Emphasis added.)
 
 
 22
 We believe this regulation makes clear that it is the fact of tribal ownership which establishes the existence of tribal land, not the identity or title of the grantor. Moreover, by defining tribal land as "any interest" in land, it includes the undivided future interests or expectancies conveyed in this case. Thus, we conclude that the conveyances are valid and that they create tribal land not subject to condemnation under section 357.
 
 
 23
 Accordingly, the judgment of the district court is affirmed in part and reversed in part.