**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF ALASKA DEPARTMENT OF
NATURAL RESOURCES; DEPARTMENT
OF TRANSPORTATION AND PUBLIC
FACILITIES,
*Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA; AGNES
M. PURDY, Owner of Native
Allotment No. 50-2008-0437
certificate no.; that portion of Native
Allotment No. 50-2008-0437
currently occupied by Chicken Ridge
Alternate, Myers Fork Spur, Chicken
to Franklin and Chicken Ridge
Trails, containing 17.5 acres;
BARBARA A. REDMON, on behalf of
Anne L. Purdy, Owner of Native
Allotment No. 50-2013-0004,
certificate no.; that portion of Native
Allotment No. 50-2013-0004
currently occupied by Chicken to
Franklin and Chicken Ridge Trails,
containing approximately 6.4 acres
of land; DENA' NENA' HENASH,
Tanana Chiefs Conference, an
Alaska non-profit corporation,
*Defendants-Appellees*.

No. 14-35051

D.C. No.
4:13-cv-00008-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Senior District Judge, Presiding

Argued and Submitted
May 12, 2015—Anchorage, Alaska

Filed March 14, 2016

Before: William C. Canby, Jr., Jay S. Bybee,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

**SUMMARY**[*]

**Quiet Title / Declaratory Judgment / Condemnation**

The panel affirmed the district court's dismissal of quiet title and declaratory judgment claims for lack of subject matter jurisdiction, and vacated the dismissal of a condemnation claim in a case involving a land dispute between the State of Alaska and two Alaska Natives, Agnes and Anne Purdy, concerning ownership of rights-of-way for four public trails that cross the Purdys' land.

The Purdys acquired ownership of the parcels in question under the Alaska Native Allotment Act through allotments by the federal government. The State of Alaska contended that

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the allotments were subject to rights-of-way for four trails. Federal statute R.S. 2477, repealed in 1976, granted rights of way over public lands; it was self-executing; acceptance of a grant was determined by state law; and under Alaska law an R.S. 2477 grant could be accepted through public use.

Addressing the State of Alaska's Quiet Title Act claim, the panel held that the State of Alaska's quiet title claim was barred. The panel held that the United States was a necessary party to the claim because it held an interest in the Purdys' allotments (by virtue of the restraint on alienation), and recognition of the R.S. 2477 rights-of-way would impair the United States' interest. The panel further held that the United States had not waived its immunity from suit pursuant to the Quiet Title Act's Indian lands exception, which preserves the United States' immunity from suit when the United States claims an interest based on that property's status as trust or restricted Indian lands. The panel concluded that the district court properly dismissed the claim for lack of subject matter jurisdiction.

The panel held that the district court correctly dismissed the State of Alaska's claim for declaratory relief under 28 U.S.C. § 2201, which sought essentially the same relief as the quiet title claim.

Addressing the State of Alaska's condemnation claim against the Purdys and the United States under 25 U.S.C. § 357, the panel held that although the district court had subject matter jurisdiction to hear the State's condemnation claim, the claim could not proceed as pleaded. The panel held that the United States was an indispensable party to the claim. The panel further held that the district court erred in dismissing the claim on the ground that the United States had

not waived its sovereign immunity because Congress waived the government's immunity with respect to such claims. The panel also held that the United States' express consent to the condemnation claim was not required. The panel concluded that the State improperly pleaded its condemnation claim, and remanded so that the State may be given an opportunity to amend the claim if it so chooses.

## COUNSEL

Michael C. Geraghty, Attorney General, David A. Wilkinson (argued), Assistant Attorney General, Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, Alaska, for Plaintiffs-Appellants State of Alaska Department of Natural Resources and Department of Transportation and Public Facilities.

Sam Hirsch, Acting Assistant Attorney General, David C. Shilton and John Emad Arbab (argued), Attorneys, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendant-Appellee United States of America.

Michael C. Kramer (argued) and Justin J. Andrews, Kramer and Associates, Fairbanks, Alaska, for Defendants-Appellees Agnes Purdy and Anne Purdy.

Richard D. Monkman, Harry R. Sachse, and Maile S. Tavepholjalern, Sonosky, Chambers, Sachse, Miller & Munson, LLP, for Defendant-Appellee Dena' Nena' Henash (Tanana Chiefs Conference).

# OPINION

WATFORD, Circuit Judge:

This case involves a land dispute between the State of Alaska and two Alaska Natives, Agnes and Anne Purdy. Agnes Purdy owns a 160-acre parcel of land in eastern Alaska near the town of Chicken; her sister Anne owns a neighboring 40-acre parcel. The State contends that it owns rights-of-way for four public trails that cross the Purdys' land, trails which the State wants to keep open for public use. The Purdys dispute the State's claim of ownership and want to stop members of the public from trespassing on their property by using the trails.

The State sued the Purdys and the United States (as well as other defendants not relevant here) in federal court. Three of the State's claims are at issue: (1) a claim seeking to quiet title to the four rights-of-way; (2) a declaratory judgment claim seeking essentially the same relief; and (3) a claim seeking to condemn for public use whatever portions of the rights-of-way the State does not already own. The district court dismissed these claims for lack of subject matter jurisdiction and entered partial final judgment under Federal Rule of Civil Procedure 54(b). The remainder of the action has been stayed pending resolution of this appeal.

We conclude that the district court properly dismissed the quiet title and declaratory judgment claims for lack of subject matter jurisdiction. We vacate dismissal of the condemnation claim because that claim may proceed if the State chooses to amend it on remand.

I

The Purdys acquired ownership of the parcels in question under the Alaska Native Allotment Act, 43 U.S.C. § 270–1 *et seq.* (1970). Congress repealed the Act in 1971 but included a savings provision for applications pending on the repeal date. 43 U.S.C. § 1617(a). As relevant here, the Act authorized the Secretary of the Interior to allot up to 160 acres of land to Alaska Natives, subject to a restraint on alienation. The relevant portion of the statute provides:

> The Secretary of the Interior is authorized and empowered, in his discretion and under such rules as he may prescribe, to allot not to exceed one hundred and sixty acres of vacant, unappropriated, and unreserved nonmineral land in Alaska . . . to any Indian, Aleut, or Eskimo of full or mixed blood who resides in and is a native of Alaska, and who is the head of a family, or is twenty-one years of age; and the land so allotted shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable and nontaxable until otherwise provided by Congress . . . .

§ 270–1. To qualify for an allotment, an applicant needed to show "substantially continuous use and occupancy of the land for a period of five years." § 270–3.

The Purdys applied for their respective allotments in 1971 before the Act was repealed. After a decades-long administrative process, the Bureau of Land Management (BLM) approved the Purdys' allotment applications,

concluding that Agnes had shown continuous use and occupancy of her 160-acre parcel since 1931, and that Anne had shown continuous use and occupancy of her 40-acre parcel since 1955. In 2008 and 2012, the BLM issued allotment certificates to the Purdys that transferred title to the land. As mandated by the Act, the allotment certificates contain a restraint on alienation stating that the land "shall be inalienable and nontaxable until otherwise provided by Congress or until the Secretary of the Interior . . . approves a deed of conveyance vesting in the purchaser a complete title to the land."

The State contends that the Purdys' allotments are subject to rights-of-way for the following trails: the Chicken to Franklin Trail, the Chicken Ridge Trail, the Chicken Ridge Alternative Trail, and the Myers Fork Spur Trail. The State's complaint alleges that the public began using these trails in the late 1800s, long before the Purdys' use and occupancy of their allotments began. The State further alleges that, by virtue of this public use, it acquired ownership of the rights-of-way under an unusual federal statute known as R.S. 2477. That statute, first enacted in 1866, provides: "The right of way for the construction of highways over public lands, not reserved for public uses, is granted." 43 U.S.C. § 932 (1970). Congress repealed the statute in 1976, but rights-of-way in existence on the date of repeal were preserved. *Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1076 (9th Cir. 2010).

R.S. 2477 is unusual, as land-grant statutes go, because of its self-executing nature. No formal document memorializing the grant of a right-of-way needed to be executed by a federal official. *Southern Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 741 (10th Cir. 2005). Nor did a State, as the

recipient of the grant, need to take any formal steps to accept the federal government's grant of a right-of-way. Acceptance of a grant is determined by state law, and under Alaska law an R.S. 2477 grant could be accepted through public use. *Fitzgerald v. Puddicombe*, 918 P.2d 1017, 1019 (Alaska 1996); *Hamerly v. Denton*, 359 P.2d 121, 123 (Alaska 1961). "The extent of public use necessary to establish acceptance of the RS 2477 grant depends upon the character of the land and the nature of the use." *Fitzgerald*, 918 P.2d at 1020. While "infrequent and sporadic" use is insufficient, *Hamerly*, 359 P.2d at 125, "continuous use is not required," *Fitzgerald*, 918 P.2d at 1020. Beyond that, the Alaska cases provide little guidance as to the quantum of public use that must be shown, other than to note that the ultimate question is whether there has been public use "for such a period of time and under such conditions as to prove that the grant has been accepted." *Hamerly*, 359 P.2d at 123.

The State's complaint alleges facts that, in its view, establish sufficient public use of the four trails to prove acceptance of the grant. For example, the State alleges that in 1926, some 517 people, 215 pack horses, 29 sleds, and 75 tons of freight traversed the Chicken to Franklin Trail, while 261 people, 86 pack horses, and 5 tons of freight traversed the Chicken Ridge Trail. Whether the public's use of the four trails was sufficient to prove acceptance under Alaska law is an issue that has not previously been resolved through litigation. The State seeks to litigate that issue now. And it seeks more particularly to show that, because the rights-of-way were accepted before the Purdys' use and occupancy of their allotments began, the Purdys took title subject to the State's pre-existing ownership interests.

II

The first question raised by this appeal is whether the district court had jurisdiction to hear the State's quiet title claim, by which it seeks to establish ownership of the four contested rights-of-way. The second question is whether the State may condemn for public use whatever portions of the rights-of-way it does not already own.

A

The district court correctly held that the State's quiet title claim is barred. The United States is a necessary party to that claim but has not waived its immunity from suit.

To establish ownership of the rights-of-way, the State sued the United States under the Quiet Title Act (QTA), 28 U.S.C. § 2409a. The QTA states in relevant part:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands . . . .

§ 2409a(a). The State had to name the United States as a defendant because it holds an interest in the Purdys' allotments (by virtue of the restraint on alienation), and recognition of the R.S. 2477 rights-of-way would impair the United States' interest. *See Minnesota v. United States*, 305 U.S. 382, 386 n.1 (1939); *United States v. City of McAlester*, 604 F.2d 42, 46 (10th Cir. 1979). The State had

to sue under the QTA because that statute provides "the exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota*, 461 U.S. 273, 286 (1983). The QTA governs even when an adverse claimant, like the State here, asserts ownership of less than a fee simple interest. *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014); *State of Alaska v. Babbitt (Albert)*, 38 F.3d 1068, 1074 (9th Cir. 1994).

The United States may be sued only if a statute expressly waives its sovereign immunity. *Block*, 461 U.S. at 280. The QTA waives the United States' immunity with respect to claims covered by that statute, but the statute excludes from its coverage claims involving "trust or restricted Indian lands." 28 U.S.C. § 2409a(a). This exclusion, known as the Indian lands exception, preserves the United States' immunity from suit "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands." *United States v. Mottaz*, 476 U.S. 834, 843 (1986).

The Indian lands exception applies if the federal government has a "colorable claim" that the lands in question are trust or restricted Indian lands. *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987). That test is met so long as the federal government's position "was not undertaken in either an arbitrary or frivolous manner." *Albert*, 38 F.3d at 1076.

The federal government has a colorable claim that the Purdys' allotments are restricted Indian lands. The allotments are Indian lands because the Purdys received the allotments under the Alaska Native Allotment Act. *See State of Alaska v. Babbitt (Foster)*, 75 F.3d 449, 450–52 (9th Cir. 1996). And

those lands are considered "restricted" by virtue of the restraint on alienation contained in the allotment certificates. *See* 25 C.F.R. § 152.1(c); *State of Alaska*, 45 IBLA 318, 321–22 (1980).  Thus, the allotment certificates alone give rise to a colorable claim that the lands in question are restricted Indian lands, *see Foster*, 75 F.3d at 452, unless the State can show that the rights-of-way it asserts were validly granted before the allotments were issued.

The State successfully made that showing in *State of Alaska v. Babbitt (Bryant)*, 182 F.3d 672 (9th Cir. 1999).  As in this case, the land at issue in *Bryant* was allotted to an Alaska Native (William Bryant), whose use and occupancy of the land began in 1964.  In 1961, however, the federal government had earlier appropriated the same land to the State for use as a material site right-of-way under a federal highway statute.  *Id.* at 673, 677 n.32.  There was no dispute that the 1961 grant to the State had in fact been made:  The statute authorizing the grant required then, as it does now, that the Secretary of Transportation file "a map showing the portion of such lands or interests in lands" that the federal government wished to appropriate.  23 U.S.C. § 317(a).  As a legal matter, then, the land was simply not available for allotment when Bryant began occupying it in 1964, and the BLM therefore lacked the authority to allot the land to Bryant in the first place.  Given those facts, we held that the federal government had no claim, much less a colorable one, that the lands in question were trust or restricted Indian lands. *Bryant*, 182 F.3d at 676–77.

Our case is different.  We do not have a clear and undisputed grant from the federal government to the State of an interest in the Purdys' allotments.  To be sure, we have a *potential* grant of such an interest under R.S. 2477, but

whether the rights-of-way were accepted (and when) is open to dispute.  Resolution of that issue would require a fact-intensive inquiry into the nature and character of the public's use of the four contested trails from the late 1800s through the 1920s.  The State may be right that it has the better of the argument—that if given the chance to do so, it could successfully show public use of the trails "for such a period of time and under such conditions as to prove that the grant has been accepted."  *Hamerly*, 359 P.2d at 123.  But even accepting as true all of the State's factual allegations concerning the nature and character of public use that occurred, the question remains whether that use establishes, as a legal matter, acceptance of the grants under Alaska law. We cannot say that the issue is so open and shut that arguing against recognition of the R.S. 2477 rights-of-way amounts to an arbitrary or frivolous position.  The federal government therefore has a colorable claim that the lands in question are restricted Indian lands.

Because the Indian lands exception applies, the district court correctly dismissed the State's quiet title claim for lack of subject matter jurisdiction.  (We decline to address the State's argument that its quiet title claim against the Purdys may proceed in the United States' absence, as the State failed to assert that argument below in opposition to the Purdys' motion to dismiss.)    The district court also correctly dismissed the State's claim for declaratory relief under 28 U.S.C. § 2201, which sought essentially the same relief as the quiet title claim.  A claim under the Declaratory Judgment Act may not be used as an end run around the QTA's limited waiver of sovereign immunity.  *McMaster v. United States*, 731 F.3d 881, 900 (9th Cir. 2013).

B

The State has also asserted a condemnation claim against the Purdys and the United States under 25 U.S.C. § 357.  That statute provides:  "Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."  The United States is an indispensable party to this claim, given the interest it holds in the Purdys' allotments.  *See Minnesota*, 305 U.S. at 386.  The State adequately named the United States as a defendant to the condemnation claim when it incorporated by reference the parties named in paragraphs 15–21 of the complaint, which included the United States.

The district court dismissed the State's condemnation claim on the ground that the United States had not waived its sovereign immunity.   That ruling was in error.   By authorizing condemnation actions under § 357, Congress waived the United States' immunity with respect to such claims.  *See Minnesota*, 305 U.S. at 388; *Jachetta v. United States*, 653 F.3d 898, 907 (9th Cir. 2011).

The Purdys contend that the State may not pursue a condemnation claim—even though authorized under § 357—unless the United States expressly consents to the suit.  That contention is squarely foreclosed by our precedent, which holds that such consent is not required.  *See Southern California Edison Co. v. Rice*, 685 F.2d 354, 356–57 & n.5 (9th Cir. 1982); *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614, 617–18 (9th Cir. 1959).  The Purdys rely on *United States v. Pend Oreille County Public Utility District No. 1*, 135 F.3d 602 (9th Cir. 1998), but that case is

distinguishable. The condemning authority there sought to condemn both tribal reservation land and individual Indian allotments by flooding the lands through construction of a dam. *Id.* at 606, 607. Because the reservation land could not be condemned under § 357 (only the individual allotments could), we held that the condemning authority needed the consent of the United States to proceed. 135 F.3d at 613–14. This case, by contrast, like *Rice* and *Nicodemus*, involves an attempt to condemn only individual allotments, so express consent by the United States is not required. *See Rice*, 685 F.2d at 357; *Nicodemus*, 264 F.2d at 617–18.

Although the district court had subject matter jurisdiction to hear the State's condemnation claim, that claim may not proceed as pleaded. The State has alleged a "confirm-and-condemn" claim that asks the district court first to "confirm" the extent of the rights-of-way it already owns under R.S. 2477. The State then asserts that it will condemn only those portions of the four trails it does not already own. The State may not plead the claim in this manner. Because the State's claim under the QTA is barred, it may not litigate title to the contested rights-of-way through the back door by asserting a condemnation claim under § 357. *See Match-E-Be-Nash-She-Wish Band v. Patchak*, 132 S. Ct. 2199, 2205 (2012). If the State wishes to condemn the contested rights-of-way in full and pay just compensation for their taking, it must make that intention clear. We vacate the district court's dismissal of the State's condemnation claim and remand the case so

that the State may be given an opportunity to amend that claim, if it so chooses.

**AFFIRMED in part, VACATED in part, and REMANDED.**

The parties shall bear their own costs.